# 21-2973

# United States Court of Appeals

## for the

# Eighth Circuit

DOUGLAS A. KELLEY,

*Appellee,*

— v. —

RITCHIE CAPITAL MANAGEMENT, L.L.C., RITCHIE SPECIAL CREDIT
INVESTMENTS, LTD., RHONE HOLDINGS II. LTD., YORKVILLE
INVESTMENTS I, LTD., AND RITCHIE CAPITAL MANAGEMENT SEZC, LTD.
F/K/A RITCHIE CAPITAL MANAGEMENT, LTD.,

*Appellants.*

———————————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA (MINNEAPOLIS)

## BRIEF FOR APPELLANTS

PATRICK H. O'NEILL, JR.
JASON T. JOHNSON
LARSON • KING, LLP
30 East Seventh Street, Ste. 2800
Saint Paul, MN 55101
(651) 312-6500

*Attorneys for Appellants*

## SUMMARY OF THE CASE

Appellants suffered millions of dollars in losses that have now been reduced to money judgments against Thomas J. Petters ("Petters") in excess of $600 million. The district court maintained one of the longest anti-litigation injunctions in the history of this Country and appointed a federal equity receiver to take custody of Petters's property. The Receiver represents he was appointed as the Receiver of property owned by up to 150 entities and was appointed as the individual Receiver for Petters's real and personal property, and any entity "100% owned or controlled" by Petters. Remarkably, at no point in this 13-year Receivership has the Receiver or district court ever identified with particularity the entities whose assets were taken into custody or accounted for all the individual property of Petters, who never filed personal bankruptcy.

If nothing else, justice and equity demand candor and transparency. The Receiver's perfunctory, unsworn Final Accounting fails to enable interested parties and this Court to gain an understanding of the results of the administration of the property in his custody, the identity of the owner, or the acts the Receiver took and on whose behalf those actions were taken which resulted in a Bar Order. This Court should vacate the Bar Order and remand this matter with instructions for the Receiver to perform a satisfactory final accounting and identify the entities in the General Receivership and account for all property in the Individual Receivership.

Oral argument will assist this Court in addressing the issues presented. Appellants request 20 minutes to present their arguments.

## CORPORATE DISCLOSURE STATEMENT

Ritchie Capital Management, L.L.C., Ritchie Special Credit Investments, Ltd., Rhone Holdings II. Ltd., Yorkville Investments I, Ltd., and Ritchie Capital Management SEZC, Ltd. f/k/a Ritchie Capital Management, Ltd., respectively, do not have parent corporations. No publicly-held corporation has any ownership interest in these entities.

# TABLE OF CONTENTS

Page

SUMMARY OF THE CASE ............................................................................... i

CORPORATE DISCLOSURE STATEMENT .................................................. ii

TABLE OF AUTHORITIES ......................................................................... vi

JURISDICTIONAL STATEMENT ................................................................ 1

STATEMENT OF THE ISSUES ................................................................... 1

STATEMENT OF THE CASE ....................................................................... 4

    A. BACKGROUND ................................................................................ 4

        1. The Parties ................................................................................ 4

        2. The Illinois State Court Litigation and Money Judgments in
           the Amount of $540,289,261.97 Plus Interest After December
           2020 ......................................................................................... 6

        3. The Commencement of the Bankruptcy Case of Certain
           Receivership Entities, and The Receiver Turns Over Property ...................... 7

        4. Appellants Sue Petters in Minnesota State Court, Hennepin
           County and Judgments for $15,465,761.35 and $32,478,092.85
           are Docketed ............................................................................. 8

        5. Judge Kyle Issues *Kelley vs. College of St. Benedict* Ruling That
           Kelley, as Receiver, Has No Standing to Sue on Behalf of
           Creditors or Avoid Transfers ....................................................... 9

    B. ORDERS SUBJECT TO THIS APPEAL .......................................... 10

        1. The District Court Approves the Receiver's Settlement with
           JPMorgan, Bars Certain Claims, and the Receiver Pay $2.5
           Million to the U.S. Marshal's Service in 2018 ............................ 10

        2. Final Accounting Motion and Hearing ...................................... 14

Appellate Case: 21-2973     Page: 4     Date Filed: 11/18/2021 Entry ID: 5099364

SUMMARY OF THE ARGUMENT ...................................................................18

ARGUMENT .................................................................................................20

   I.  THIS MATTER MUST BE REMANDED TO THE DISTRICT
      COURT WITH INSTRUCTIONS FOR THE RECEIVER TO
      PERFORM A SATISFATORY FINAL ACCOUNTING,
      IDENTIFY THE ENTITIES IT WAS ACTING AS THE
      RECEIVER FOR, AND MAKE AVAIABLE RELEVANT
      DOCUMENTS TO INTERESTED PARTIES .................................................20

      A.  The Final Accounting is Woefully Inadequate, and the District
          Court Abused its Discretion in Approving the Final
          Accounting .......................................................................................21

      B.  The District Court Abused its Discretion by Discharging the
          Receiver Without Ever Requiring the Receiver to Identify with
          Particularity the Precise Receivership Entities Whose Property
          was Taken Into Custody by the District Court .................................30

      C.  The District Court Abused its Discretion in Approving the
          Receiver's Proposed Procedure for Record Retention and
          Document Destruction ......................................................................32

   II. THE DISTRICT COURT ABUSED ITS DISCRETION IN
      APPROVING THE RECEIVER'S SETTLEMENT WITH
      JPMORGAN AND THIS COURT SHOULD VACATE THE
      BAR ORDER BECAUSE IT IS A BLATANT DUE PROCESS
      VIOLATION AND THE DISTRICT COURT DID NOT
      HAVE SUBJECT MATTER JURISDICTION .................................................35

      A.  Appellants' Due Process Rights Were Violated by the Bar
          Order .................................................................................................35

      B.  The District Court Did Not Have Subject Matter Jurisdiction
          to Enter the May 21, 2018 Bar Order ...............................................39

CONCLUSION .............................................................................................42

CERTIFICATE OF COMPLIANCE.................................................................43

CERTIFICATE OF SERVICE.......................................................................44

Appellate Case: 21-2973    Page: 6    Date Filed: 11/18/2021 Entry ID: 5099364

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Auer v. Trans Union, LLC,*
   902 F.3d 873, 877 (8th Cir. 2018) ....................................................................39

*Bounds v. Smith,*
   430 U.S. 817, 828 (1977) ...............................................................................35

*Caplin v. Marine Midland Trust Co.,*
   406 U.S. 416, 421-34 (1972) ......................................................................... 2, 41

*Coal. for Fair and Equitable Regulation of Docks on Lake of the*
   *Ozarks v. Fed. Energy Regulatory Comm'n,*
   297 F.3d 771, 778 (8th Cir. 2002) ..................................................................35

*Corning Inc. v. PicVue Electronics, Ltd.,*
   365 F.3d 156 (2d Cir. 2004) ..........................................................................38

*Dalton v. NPC Int'l, Inc.,*
   922 F.3d 693, 698 (8th Cir. 2019) ..................................................................39

*Dickie v. Flamme Bros.,*
   251 Neb. 910, 917, 560 N.W.2d 762, 767 (1977) ..........................................23

*Eberhard v. Marcu,*
   530 F.3d (2d Cir. 2008) ..................................................................................41

*Global NAPs, Inc. v. Verizon New England, Inc.,*
   389 F. Supp. 3d 144, 145-46 (D. Mass. 2019) ..............................................32

*Hansberry v. Lee,*
   311 U.S. 32, 42 (1940) ................................................................................ 3, 36

*Hennepin County v. M.W. Savage Factories,*
   83 F.2d 453, 454 (8th Cir. 1936) ............................................................. 23, 25

Appellate Case: 21-2973    Page: 7    Date Filed: 11/18/2021 Entry ID: 5099364

*In re Sundance Corp., Inc.,*
    149 B.R. 641, 653 (Bankr. E.D. Wash. 1993) ....................................................21

*Inst. of Cetacean Research v. Sea Shepherd Conservation Soc'y,*
    774 F.3d 935, 953 (9th Cir. 2014) ....................................................38

*Kelley v. Boosalis,*
    No. 18-cv-0868 (SRN/TNL), Order (D. Minn. Nov. 19, 2018) ....................16

*Kelley v. College of St. Benedict,*
    901 F. Supp. 2d 1123, 1128 (2012) .............................................. 9, 10

*MacGregor v. Johnson-Cowdin-Emmerich, Inc.,*
    39 F.2d 574, 576 (2d Cir. 1930) (Hand, J.) ........................................25

*Matthews v. Eldridge,*
    424 U.S. 319, 332-33 (1976) ....................................................36

*Mechanics Trust Co. of Harrisburg, Pa. v. Ensminger Lumber Co.,*
    27 F.2d 877, 880 (3d Cir. 1928) ..............................................2, 22, 27

*Missouri & K.I. Ry. Co. v. Edson,*
    224 F. 79, 83 (8th Cir. 1915) .................................................. 2, 28

*Mitshele v. Meadow Brook Inv. Corp.,*
    197 A. 31, 33 (N.J. Ch. 1938) ....................................................22

*Phelan v. Middle States Oil Corp.,*
    154 F.2d 978, 988-89 (2d Cir. 1946) ..........................................*passim*

*Post v. Harper,*
    980 F.2d 491, 493 (8th Cir. 1992) ................................................36

*Ritchie Capital Mgmt., L.L.C. v. JPMorgan Chase & Co.,*
    Adv. No. 15-04128, 2017 WL 2799878, at *4 (Bankr. D. Minn.
    May 31, 2017) ....................................................................8

*Ritchie Special Credit Inv. Ltd. v. JPMorgan Chase & Co.,*
    14-cv-4786, 2021 WL 2686079, at *6 (D. Minn. June 30, 2021)............13, 14, 37

Appellate Case: 21-2973    Page: 8    Date Filed: 11/18/2021    Entry ID: 5099364

*Schmidt v. Lessard,*
  414 U.S. 473, 476 (1974) ...................................................................................38

*Schneider v. United States,*
  27 F.3d 1327, 1333 (8th Cir. 1994) ....................................................................36

*Scholes v. Schroeder,*
  744 F. Supp. 1419, 1421 (N.D. Ill. 1990) ..........................................................31

*S.E.C. v. Hardy,*
  803 F.2d 1034, 1037 (9th Cir. 1986) ..................................................................21

*S.E.C. v. Harris,*
  No. 3:09-cv-01809, 2015 WL 418107, at *2 (N.D. Tex. Feb. 2, 2015) .......................25

*S.E.C. v. Quan,*
  870 F.3d 754, 759 (8th Cir. 2017) ................................................................ 20, 35

*United States v. Bradley,*
  No. CR 405-059, 2019 WL 1903413, at *3 (S.D. Ga. Apr. 29, 2019) .................. 32, 33

*United States v. Petters,*
  663 F.3d 675 (8th Cir. 2011) ..............................................................................4

*United States v. Ritchie Special Credit Inv., Ltd.,*
  620 F.3d 824, 835 (8th Cir. 2010) ......................................................................36

*Weber v. Empire Holding Corp.,*
  149 Or. 503, 508, 41 P.2d 1084, 1086 (1935) ....................................................22

*Wilkinson v. Washington Tr. Co. of City of New York,*
  102 F. 28, 30 (8th Cir. 1900) .................................................................2, 22, 31

*Windsor v. McVeigh,*
  93 U.S. 274, 280 (1876) ....................................................................................35

*Zacarias v. Stanford Int'l Bank, Ltd.,*
  945 F.3d 883 (5th Cir. 2019) ......................................................................*passim*

Appellate Case: 21-2973     Page: 9     Date Filed: 11/18/2021 Entry ID: 5099364

## Statutes

11 U.S.C. § 544 ............................................................................................5

18 U.S.C. § 1345 (Anti-Fraud Injunction Act) ................................................. 1, 4

28 U.S.C. § 1291 .........................................................................................1

28 U.S.C. § 3103(d) .............................................................................23, 24, 33

28 U.S.C. § 3103(g) ....................................................................................24

U.S. Const. Amend. V ................................................................................3

## Rules

Fed. R. Civ. P. 65(d) ..................................................................................38

Fed. R. Civ. P. 66 .....................................................................................21

Minn. Gen. R. Prac. 137.10 ..........................................................................28

## Other Authorities

Emil F. Bohne, *Accounting for Receiverships,*
  The University Journal of Business, Vol. 2, No. 2, at 200 (1994) ........................ 21, 23

H.C. Freeman, *Accounting for Receiverships,*
  Journal of Accountancy, pp. 234-65 (Oct. 1917) ...........................................23

David A. Gradwohl & Karin Corbett, *Equity Receiverships for Ponzi Schemes,*
  34 Seton Hall Legis. J. 181, 205 (2010) ................................................... 39, 40

WCCO, *Tom Petters Resigns as Petters Group CEO,*
  September 29, 2008, https://web.archive.org/web/20090210041450/
  http://wcco.com/business/tom.petters.ceo.2.828534.html ...........................................4

# JURISDICTIONAL STATEMENT

On October 2, 2008, Plaintiff United States of America commenced this action in the United States District Court for the District of Minnesota against Petters and various business associates under the Anti-Fraud Injunction Act, 18 U.S.C. § 1345, to preserve assets for victim restitution and forfeiture. The district court had subject matter jurisdiction under 18 U.S.C. § 1345.

The district court entered a preliminary injunction and appointed a Receiver on October 6, 2008. [App. 1, R.Doc. 12 at 1-15.] Appellants appeal from two orders, issued over their objection, by the district court during the receivership. First, the district court's May 21, 2018 Order approving a $2.5 million settlement with JPMorgan and imposing a Bar Order. [ADD-1.] Second, the district court's July 29, 2021 Order approving the Receiver's Final Accounting, discharging the Receiver, and terminating the Receivership. [ADD-6.] The district court entered judgment on August 2, 2021. [ADD-15.]

Appellants timely appealed on August 30, 2021. [App. 1189-90, R.Doc. 3276 at 1-2.] This Court has jurisdiction pursuant to 28 U.S.C. § 1291.

# STATEMENT OF THE ISSUES

1.     Did the District Court for the District of Minnesota err in granting the Receiver's motion to approve his final fees and costs, close the Receivership, and discharge the Receiver, (a) without establishing a claim process for creditors; (b) without requiring the Receiver to identify and/or notify the creditors the Receiver claimed

Appellate Case: 21-2973    Page: 11    Date Filed: 11/18/2021 Entry ID: 5099364

recoveries on behalf of; (c) without requiring the Receiver to identify the property disposed of; and (d) without exercising any oversight over the retention and release of Receivership documents now that the Receivership is closed?

Authorities:

- *Wilkinson v. Washington Tr. Co. of City of New York*, 102 F. 28, 30 (8th Cir. 1900)

- *Missouri & K.I. Ry. Co. v. Edson*, 224 F. 79, 83 (8th Cir. 1915)

- *Mechanics' Trust Co of Harrisburg, Pa. v. Ensminger Lumber Co.*, 27 F.2d 877, 880 (3d Cir. 1928)

- *Phelan v. Middle States Oil Corp.*, 154 F.2d 978, 988-89 (2d Cir. 1946)

2.      Did the District Court for the District of Minnesota err in approving the Receiver's $2.5 million settlement with JPMorgan, *et al.* in May of 2018 without first determining whether the Receiver had standing to pursue its claims?

Authorities:

- *Zacarias v. Stanford International Bank, Ltd.*, 945 F.3d 883 (5th Cir. 2019)

- *Caplin v. Marine Midland Trust Co.*, 406 U.S. 416, 421-34 (1972)

3.      Did the District Court for the District of Minnesota err in approving the Receiver's $2.5 million settlement with JPMorgan, *et al.* and barring any "derivative" claims without defining or applying the correct legal standard of what constitutes a "derivative" or "direct" claim?

2

Authorities:

- *Zacarias v. Stanford International Bank, Ltd.*, 945 F.3d 883 (5th Cir. 2019)

4.      Did the District Court for the District of Minnesota err in approving the Receiver's $2.5 million settlement with JPMorgan, *et al.* and allowing 100% of the settlement funds to be distributed to the United States Marshal's Service Remission Fund, rather than the direct creditors of Petters that the Receiver purportedly commenced the lawsuit on behalf of?

Authorities:

- *Zacarias v. Stanford International Bank, Ltd.*, 945 F.3d 883 (5th Cir. 2019)

5.      Did the District Court for the District of Minnesota violate Appellants' due process and property rights by allowing the Receiver to settle their claims without their consent, remit payment of those funds to unrelated third persons who were not parties to the Receivership, and barring Appellants from pursuing those claims?

Authorities:

- U.S. Const. Amend. V

- *Zacarias v. Stanford International Bank, Ltd.*, 945 F.3d 883 (5th Cir. 2019)

- *Hansberry v. Lee*, 311 U.S. 32, 42 (1940)

# STATEMENT OF THE CASE

## A.     BACKGROUND

### 1.     The Parties

Appellants Ritchie Capital Management, L.L.C. ("RCM LLC"), Ritchie Special Credit Investments, Ltd. ("Special Credit"), Rhone Holdings II. Ltd. ("Rhone Holdings"), and Ritchie Capital Management SEZC, Ltd. (RCM, Ltd.") are Cayman Islands exempted companies. Appellant Yorkville Investments I, Ltd. is a limited liability company operating under the laws of the State of Delaware.

On September 24, 2008, federal law enforcement agencies executed a search warrant at the principal place of business of Petters Company, Inc. ("PCI") in Minnetonka. *See United States v. Petters*, 663 F.3d 675 (8th Cir. 2011).

On September 29, 2008, Petters resigned as Officer and Director of various companies that he owned or controlled, including Petters Group Worldwide, LLC, ("PGW"), a Delaware limited liability company.[1]

On October 2, 2008, the United States of America, under seal, commenced this action under the Anti-Fraud Inunction Act, 18 U.S.C. § 1345, against Petters, PCI and other business associates (but not PGW), to preserve assets for victim restitution and forfeiture if related criminal investigations of the multi-billion-dollar Ponzi scheme

---

[1] *See* WCCO, *Tom Petters Resigns as Petters Group CEO*, Sept. 29, 2008, available at https://web.archive.org/web/20090210041450/http://wcco.com/business/tom.petters.ceo.2.828534.html.

Appellate Case: 21-2973     Page: 14     Date Filed: 11/18/2021 Entry ID: 5099364

resulted in convictions. [R.Doc. 1 at 1-2.] Notably, PGW was not named as a Defendant.

In an order entered on October 6, 2008, Appellee Douglas A. Kelley ("Kelley") was appointed as the Receiver of what the district court described as "the Entities," pursuant to a stipulation between the United States of America and Petters ("First Receivership Order"). The First Receivership Order provided in pertinent part:

> IT IS THEREFORE ORDERED that Defendants PETTERS COMPANY, INC.; PETTERS GROUP WORLDWIDE, LLC; and any affiliates, subsidiaries divisions, successors, or assigns owned 100% or controlled by the foregoing but excluding: THOMAS PETTERS, INC., and its subsidiaries including but not limited to" MN Airlines, LLC, dba SUN COUNTRY AIRLINES (hereinafter referred to as the "Entities") ... are hereby restrained and enjoined ... IT IS FURTHER ORDERED that Douglas A. Kelley is appointed Receiver for the Entities with the full power of an equity Receiver.

[App. 4, R.Doc. 12 at 4.]

The First Receivership Order expressly granted Kelley the powers of an "equity receiver." [App. 9, R.Doc. 12 at 9.] The First Receivership Order authorized Kelley to file a petition for bankruptcy relief on behalf of the "Entities" to the extent necessary to preserve their assets. [App. 11-12, R.Doc. 12 at 11-12.] The First Receivership Order did *not*, however, grant Kelley the avoidance powers of a trustee under Section 544 of the Bankruptcy Code or standing to assert a state-law-based cause of action to "avoid" allegedly fraudulent transfers of the assets of any of the entities. [*See generally id.*]

On December 8, 2008, the district court entered a Second Amended Order for Entry of Preliminary Injunction, Appointment of Receiver, and Other Equitable Relief

("Second Amended Receivership Order"). [App. 65, R.Doc. 127.] The Second Amended Receivership Order appointed Douglas A. Kelley as Receiver of the "Defendants." [App. 65, R.Doc. 127 at 13, IV(A.).] The term "Defendants" was defined to include "Entities" 100% owned or controlled by Petters that were neither "Defendants" nor parties to the case, including Thomas Petters, Inc. and its subsidiaries. [App. 56-57, R.Doc. 127 at 4-5.]

### 2. The Illinois State Court Litigation and Money Judgments in the Amount of $540,289,261.99 Plus Interest After December 2020

On or about September 30, 2008, several of the Appellants commenced a civil action in Illinois State Court (the "Illinois State Court Action") asserting a right to payment from Petters in the amount of approximately $206 million that was due and owing by Petters and PGW under certain promissory note instruments (the "Petters Notes") and the imposition of a constructive trust over the property of Petters and PGW under Illinois law. [App. 1104-05, R.Doc. 3262 at 1-2; App. 1106, R.Doc. 3263.]

On October 22, 2008, the Minnesota district court issued a blanket anti-litigation injunction ("Anti-Litigation Injunction"). [App. 50, R.Doc. 70 at 18.] The Anti-Litigation Injunction enjoined any party from "[C]ommencing, prosecuting or continuing a judicial, administrative, or other action or proceeding against Receivership Defendants" and effectively precluded Appellants from pursuing the Illinois State Court Action. [App. 50-51, R.Doc. 70 at 18-19.]

Appellate Case: 21-2973   Page: 16   Date Filed: 11/18/2021 Entry ID: 5099364

The Anti-Litigation Injunction was dissolved in August 2019. On December 23, 2019, judgments in the amounts of $350,466,141.35 (Ritchie Special Credit Investments, Ltd.), $97,611,806.75 (Rhone Holdings II. Ltd.) and $92,211,213.87 (Yorkville Investments I, Ltd.) for a total of $540,289,261.97 were entered with the Circuit Court of Cook County, Illinois under Case No. 19-L 11026. A Citation to discover assets was filed on June 15, 2020 and served upon Petters in Leavenworth Prison on July 10, 2020 and filed with the Circuit Court of Cook County on August 20, 2020. [App. 1105, R.Doc. 3262 at 2 (citing R.Docs. 9483541 and 9989041).]

### 3. The Commencement of the Bankruptcy Case of Certain Receivership Entities, and the Receiver Turns Over Property

On October 11, 2008, Kelley, purportedly in his capacity as the Receiver of PCI and PGW, filed petitions for Chapter 11 bankruptcy relief on their behalf in the United States Bankruptcy Court for the District of Minnesota. *See In re Petters Company, Inc.,* No. 08-bk-25257 (KHS) (Bankr. D. Minn. Oct. 11, 2008); *In re Petters Group Worldwide, LLC,* No. 08-bk-25258 (KHS) (Bankr. D. Minn. Oct. 11, 2008). As a result, all of the property of PCI and PGW, legal or equitable and wherever located, became property of their respective bankruptcy estates, subject to the exclusive jurisdiction of the United States Bankruptcy Court. [*Id.*]

In early 2009, Kelley, in his capacity as Receiver of the assets of PCI, PGW, and certain entities for which he had also filed petitions for bankruptcy relief in October 2008, filed a document with the Bankruptcy Court memorializing the Receiver's

7

turnover of the property of the Debtors' receivership estates. [App. 74, R.Doc. 155 (08-br-45257).] Thereafter, none of the assets of PCI, PGW, PC Funding, LLC, Thousand Lakes, LLC, or any of the other Petters-related Special Purpose Entities were in the custody of the district court in connection with the receivership action. On the contrary, those assets were subject to the exclusive jurisdiction of the Bankruptcy Court in their respective cases.[2]

### 4. Appellants Sue Petters in Minnesota State Court, Hennepin County and Judgments for $15,465,761.35 and $32,478,092.85 are Docketed

On September 23, 2014, due to a lack of any Receivership claims procedure and to toll any applicable statute of limitations, Appellants served a Minnesota state district court Complaint against Petters with claims for fraudulent inducement and breach of contract. *Ritchie Capital Mgmt., L.L.C. v. Thomas J. Petters*, (the "Minnesota State Court Action").

The Summons and Complaint in the Minnesota State Court Action were later filed in Hennepin County District Court, State of Minnesota, on September 4, 2015. *Ritchie Capital Mgmt., L.L.C. v. Thomas J. Petters*, No. 27-cv-15-15765 (Minn. Dist. Ct.).

---

[2] On May 31, 2017, the Bankruptcy Court issued a Report and Recommendation wherein it determined that once the Bankruptcy Plan was confirmed on April 8, 2016, "the estate of the debtor, and thus the [B]ankruptcy [C]ourt's jurisdiction, cease[d] to exist," and further noted in the order confirming the Plan that it did not retain jurisdiction over Ritchie's case. *Ritchie Capital Mgmt., L.L.C. v. JPMorgan Chase & Co.*, Adv. No. 15-04128, 2017 WL 2799878, at *4 (Bankr. D. Minn. May 31, 2017) (citation omitted).

Appellants sought to lift the stay in 2015, and in 2017 sought to lift the Anti-Litigation Injunction and/or terminate the Receivership in order to proceed to the entry of judgment in this action. The motion filed in 2017 was denied [App. 166-181, R.Doc. 2915 at 1-16.] and was appealed. [8th Cir., App. No. 17-3379.]

On August 20, 2019, in exchange for dismissing its appeal, Appellants obtained a lift from the stay. [App. 453-55, R.Doc. 3120 at 1-3.] On March 10, 2020, judgments for the payment of money were entered against Petters and in favor of two of Appellants-related entities in the following amounts:

- $15,465,761.35 in favor of Ritchie Capital Management, Ltd.
- $32,478,092.85 in favor of Ritchie Special Credit Investments, Ltd.

[App. 543, R.Doc. 3240 at 10.]

To date, Appellants have not received any payments on these judgments.

### 5. Judge Kyle Issues *Kelley vs. College of St. Benedict* Ruling That Kelley, as Receiver, Has No Standing to Sue on Behalf of Creditors or Avoid Transfers

In April 2012, the Receiver commenced a lawsuit against the College of Saint Benedict, asserting four fraudulent-transfer claims against the College in an attempt to recover more than $2 million in donations that Petters made. *Kelley v. Coll. of St. Benedict*, 901 F. Supp. 2d 1123, 1127 (2012). The college moved to dismiss, arguing that Kelley, in his capacity as Receiver, lacked standing to bring claims on behalf of third-party creditors. *Id.* at 1128. On October 26, 2012, Judge Kyle found:

Appellate Case: 21-2973   Page: 19   Date Filed: 11/18/2021 Entry ID: 5099364

[A]n equity receiver may sue only on behalf of the entity (or person) in receivership, not third parties. This is because a receiver "stands in the shoes" of the receivership entity. A federal equity receiver is akin to a bankruptcy trustee, *e.g., Scholes v. Lehmann,* 56 F.3d 750, 753 (7th Cir.1995), a role that Kelley also happens to play in this case. That role requires him to maximize the receivership estates' assets for the *benefit* of creditors, including the United States, but contrary to Kelley's assertion it does *not* give him standing to *sue* on their behalf.

*Id.* (internal citations omitted). Judge Kyle further stated:

[I]t is unclear whether Judge Montgomery intended her order to sweep this broadly. More importantly, courts have rejected attempts by receivers to use appointment orders to create standing to sue on behalf of non-receivership entities. This is because "the appointment of a receiver is inherently limited by the jurisdictional constraints of Article III and all other curbs on federal court jurisdiction." *Scholes v. Schroeder,* 744 F. Supp. 1419, 1421 (N.D.Ill.1990). Granting a receiver authority to bring claims held by others would violate those limitations, as "the ability to confer substantive legal rights that may create standing [under] Article III is vested in Congress and not the judiciary." *Id.* at 1421 n. 6.

*Id.* at 1129 (internal citations omitted). [3]

## B.     ORDERS SUBJECT TO THIS APPEAL

### 1.     The District Court Approves the Receiver's Settlement with JPMorgan, Bar's Certain Claims, and the Receiver Pays $2.5 Million to the U.S. Marshal's Service in 2018

Kelley in his capacity as the Court-appointed Receiver of "the above captioned individual and entities," commenced a lawsuit seeking to avoid certain fraudulent transfers of interests of Petters in property against JPMorgan Chase & Co., *et al.*

---

[3] The case was appealed, settled, and dismissed before any decision on standing by this Court. [Appeal No. 12-3796 (8th Cir. July 14, 2014).]

Appellate Case: 21-2973     Page: 20     Date Filed: 11/18/2021 Entry ID: 5099364

("JPMorgan"). [App. 85-128, R.Doc. 1 (10-cv-4999) at 1-44.] The Complaint refers to the October 6, 2008 and December 8, 2008 Orders but fails to allege any of the "Entities" or "Defendants" as those terms are defined in said Orders and fails to identify any specific amount owed by Petters or how said amount is legally enforceable. The Complaint notes that all assets that were owned by Petters or any of the businesses he owned 100% or controlled were frozen; it does not, however, identify the entities that fit that description. [App. 86-89, R.Doc. 1 (10-cv-4999) at 2-5.]

The Receiver's case against JPMorgan was originally filed in 2010, but a stipulation was entered to stay the Receiver's case against JPMorgan on November 30, 2011. [App. 130-136, R.Doc. 14 (10-cv-4999) at 1-7.] In December 2016, a second stipulation was approved by the Court to stay the case until the separate Joint Adversary proceeding against JPMorgan was decided. Appellants moved to intervene, but the motion was denied by Magistrate Judge Bowbeer and affirmed by Judge Nelson on April 9, 2018. [App. 182-203, R.Doc. 68 (10-cv-4999) at 1-22.] Appellants appealed the order denying the intervention, but voluntarily dismissed the appeal on the basis that they could object to the settlement in the Receivership action and preserve the issue for the instant appeal. [App. 398-399, R.Doc. 69 (10-cv-4999) at 1-2; App. 448, R.Doc. 75 (10-cv-4999).]

On April 25, 2018, the Receiver moved for approval of its settlement with JPMorgan and for an order barring certain claims. [App. 204-222, R.Doc. 2979 at 1-17.] Appellants objected to the settlement and proposed Bar Order, arguing that the

Receiver lacked standing and requested that the district court hold a hearing to determine the precise "entities" the Receiver was suing on behalf of. [App. 279-303, R.Doc. 2984 at 1-25.] On May 15, 2018, the district court heard the motion to approve the settlement and, over the objection of Appellants, approved the settlement. [ADD-1.] In his motion, and at the hearing to approve the settlement, the Receiver never precisely identified who it sued JPMorgan on behalf of. In his motion papers, the Receiver claimed that: "Dozens of entities owned or controlled by Thomas Petters are also in the Receivership, and it is on *their behalf* as creditors of Thomas Petters that the Receiver brought the fraudulent transfer claims against JPMorgan." [App. 408, R.Doc. 2986 at 7 (emphasis added).] At the hearing, the Receiver, Kelley himself (*i.e.,* not counsel), explained: "I just want to say one thing. I can assure [Appellants] that the two and a half million dollars that comes into the receivership will all be going to the Government and will be part of the remission process." [App. 440, R.Doc. 2977 at 21.] The district court asked, "So it'll go to victims as opposed to creditors?" [App. 440, R.Doc. 2977 at 21.] And the Receiver responded, "Correct." [App. 440, R.Doc. 2977 at 21.]

In approving the settlement, the Court never ruled which "receivership" would receive the $2.5 million, and never ruled or approved that no monies would be paid to these unidentified creditors of Petters, despite counsel's representation to the contrary. After the settlement was approved, the Receiver reported in a status report that all $2.5 million had been remitted to the United States Marshal's Service. [App. 450, R.Doc.

Appellate Case: 21-2973    Page: 22    Date Filed: 11/18/2021 Entry ID: 5099364

3058 at 2.] Without notice, Appellants later discovered that the district court presiding over Petters's *criminal* case granted the government's motion to forfeit the $2.5 million recovered on the Receiver's fraudulent transfer claim against JPMorgan as "substitute res." [R.Doc. 671 (08-cr-364), Final Forfeiture Order.] Turning over $2.5 million to the U.S. Marshal's Service or Remission Fund is contrary to the representations to the Court as to how the Receiver may have had standing to bring an action against JPMorgan to avoid fraudulent transfers of interests of Petters.

In connection with the settlement, and over Appellants' objection, the district court also entered a sweeping injunction barring certain claims ("Bar Order"):

> Any and all Petters Creditors, anyone acting on behalf of or in concert or participation with any of the Petters Creditors, or anyone whose Claim in any way arises from or is related to the Receivership Individuals & Entities, the Receivership Estates, Thomas J. Petters, and/or Petters' Ponzi Scheme is barred and permanently enjoined from asserting or prosecuting any Claim that belongs or belonged to the Receiver, whether or not already asserted by the Receiver, or is derivative of such a Claim, whether denominated in tort, unjust enrichment, or otherwise, and including but not limited to Claims for fraudulent transfer, against any of the Entity Defendant Released Parties and Individual Defendant Released Parties ("the Barred Claims.").

[ADD-4-5.]

Between the time the Receiver filed and settled its case against JPMorgan, Appellants also commenced an action against JPMorgan in 2014 and sought to avoid the transfer of its $6.5 million to Petters and set aside the March 19, 2008 UCC-1 and security agreement. *Ritchie Special Credit Invs. v. JPMorgan Chase & Co.*, No. 14-cv-4786 (DWF/FLN), 2021 WL 268079 (D. Minn. June 30, 2021). Within the last six months,

13

the district court ultimately applied the Bar Order to bar Appellants' claims against JPMorgan as derivative of the Receiver's claims against JPMorgan.[4] [*Id.*]

## 2.   Final Accounting Motion and Hearing

On January 8, 2021, the Receivership was terminated. [App. 505-508, R.Doc. 3223 at 1-4.] On June 9, 2021, the Receiver filed a Final Accounting and moved to approve final fees and costs, close the "General Receivership," and establish procedures for record retention and to authorize destruction of records and miscellaneous property. [App. 524-26, R.Doc. 3235 at 8-10.] The same day, the Receiver filed a Final Accounting of Assets and Expenses associated with the "Individual Receivership" of Petters. [App. 509-516, R.Doc. 3234 at 1-8.]

In its Final Accounting for the General Receivership, the Receiver indicates that he was appointed Receiver for entities "100% owned or controlled" by Petters and other defendants, including Thomas Petters, Inc. [App. 518, R.Doc. 3235 at 2.] The Receiver further noted that more than 150 entities were involved in Petters's scheme. [App. 519, R.Doc. 3235 at 3.] The Receiver provided a list of "Total Receivership

---

[4] This matter is currently on appeal. [*See* Appeal No. 21-2707.] In its brief, JPMorgan argues that the Appellants attack on the lack of standing is collateral and the district court presiding over the Receivership can approve a bar order without determining legal standing. Appellants submit that challenging the authority and standing of the Receiver is proper in both appeals, and if this Court finds the district court erred in issuing the Bar Order, it would affect Appeal No. 21-2707.

Appellate Case: 21-2973    Page: 24    Date Filed: 11/18/2021 Entry ID: 5099364

Recoveries" as Schedule I to the Final Accounting, which notes recoveries from 31 different entities. [App. 530, R.Doc. 3235-1 at 2.]

In the Final Accounting for the Individual Receivership, the Receiver submitted an 8-page motion and report but failed to disclose or allow a review of the accounts, bank deposits and withdrawals, or a breakdown of professional services rendered to the Individual Receivership. [App. 509-516, R.Doc. 3234 at 1-8.] The Final Account does not disclose the property of Petters that was not liquidated, including his equity security interests in the entities that were 100% owned by Petters at the time of the Receivership. [App. 555, R.Doc. 3240 at 22.]

The Receiver also requested the district court to approve certain fees and a procedure for documents retention and destruction. [App. 524-26, R.Doc. 3235 at 8-10.] The Receiver noted, "[i]n the event ultimate costs and expenses incurred by the above professional or the Receiver (at the hourly rates currently allowed by the Court) exceed the pre-paid and non-refundable amounts by a material amount, the Receiver on behalf of himself and the professionals may request the payment of such additional amounts by the PCI Liquidating Trust, which request the PCI Liquidating Trust[5] will reasonably consider, and if agreed will make pursuant to the ongoing cooperation

---

[5] The reference to the "related bankruptcy distributions" and the PCI Liquidating Trust also demonstrates a flaw in the final accounting which comingled information of the disposition of property of the Bankruptcy Estates. The payments for expenses incurred in the bankruptcy cases, which Appellants submit exceed $300 million, are not referenced.

Appellate Case: 21-2973    Page: 25    Date Filed: 11/18/2021 Entry ID: 5099364

obligations as set forth in the Coordination Agreement." [App. 523-24, R.Doc. 3235 at 7-8.] In other words, given that the Receiver is also the Trustee of the PCI Liquidating Trust,[6] the Receiver asked for authority to request fees for himself—from himself—subject only to the requirement that he reasonably consider them.

As to the document retention procedure, the Receiver requested authority to destroy documents after one year from the date of the order approving the motion. [App. 525-26, R.Doc. 3235 at 9-10.] But even if a request for documents was made within one year, the Receiver proposed that he "may, but is not obligated to" turn over Receivership property. [App. 525-26, R.Doc. 3235 at 9-10.]

Appellants objected to the request for fees, proposed document retention procedures, proposed Final Accounting for both the General Receivership and the Individual Receivership, and argued that the Receiver should be required to identify the entities it acted as the Receiver for. [App. 546-60, R.Doc. 3240 at 13-27.] At the hearing on the matter, Appellants argued that the Final Accounting for the General Receivership should not be approved until the Receiver lists under oath the precise receivership entities that he was the receiver of, the assets and interests of those entities, how they were disposed of, and the non-receivership entities or creditors that he

---

[6] *E.g., Kelley v. Boosalis*, No. 18-cv-0868 (SRN/TNL), Order (D. Minn. Nov. 19, 2018) ("Douglas A. Kelley, in his Capacity as the PCI Liquidating Trustee for the PCI Liquidating Trust . . . .").

Appellate Case: 21-2973     Page: 26     Date Filed: 11/18/2021 Entry ID: 5099364

commenced lawsuits on behalf of, including the JPMorgan lawsuit. [App. 1128-29, R.Doc. 3272 at 22-23.]

As to the 150 entities, Counsel for the Receiver responded, "that's in the org chart we got from the Petters entity, if you will, at the time the receivership and the bankruptcy estates all were commenced." [App. 1145-46, R.Doc. 3272 at 39-40.] "It's not sworn or verified because it wasn't prepared by the receiver. It was prepared by Petters entities or Petters people. But it lists the various entities. It lists what's a hundred percent owned, whether it's owned by PCI, PGW, Polaroid, Sun Country. You know, it's got all of these different entities all laid out in the org chart with footnotes. And that's, essentially, the best information that the receiver has had to work with through the course of the case as well." [App. 1145-46, R.Doc. 3272 at 39-40.] Counsel continued by stating that, if you were to look at the chart and you pull out the entities that are in bankruptcy, whether it was Polaroid, Petters Capital, Thomas Petters, Inc., etc., then "virtually every other entity on the chart is in the receivership except perhaps one or two or three, where Petters had just a small minority interest." [App. 1146, R.Doc. 3272 at 40.]

In its objection to the Final Accounting, Appellants further challenged the approval of the 2018 settlement, the Bar Order, and allowance of JPMorgan to "retain its lien" on approximately $4,657,003.27 million held in its custody. [App. 551-54, R.Doc. 3240 at 18-20.]

Appellate Case: 21-2973    Page: 27    Date Filed: 11/18/2021 Entry ID: 5099364

On July 29, 2021, the district court rejected Appellants' requests for a hearing and/or a listing under oath of the Receivership entities the Receiver sued on behalf of and approved the Receiver's Final Accounting for both the General Receivership and the Individual Receivership of Petters, procedure for document and property retention, and discharged the Receiver. [App. 1176-1184, R.Doc. 3274 at 1-9.] Appellants timely filed this appeal on August 30, 2021.

## SUMMARY OF THE ARGUMENT

An interested party and this Court should be able to review a final accounting and understand what happened, who was represented, what property was received or abandoned, and trace monetary recoveries. The Receiver's perfunctory, unsworn Final Accounting fails at this essential purpose. While the flaws in the administration of this Receivership are innumerable, there are two overarching issues that are the subject of this appeal.

***First,*** the Final Accounting fails to disclose the most fundamental information from the Receiverships, including the entities the Receiver acted for and commenced lawsuits on behalf of. The Receiver maintains that he was appointed as the Receiver for the property owned by all entities "100% owned or controlled by" Petters, which includes more than 150 entities. Yet, for more than a decade, the Receiver has ***never*** specifically identified the entities it was purportedly acting for.

Appellants' repeated demands for transparency and disclosure have been rebuffed. At the hearing on the motion to approve the Final Accounting, the Receiver

18

referred to an organizational chart of 150 entities provided by a Petters entity that was "not sworn or verified" and not in the record, asserting that without the entities that were in bankruptcy, "virtually" all of the remaining entities were in the Receivership, except "perhaps one, or two, or three." That response is woefully insufficient under any conceivable standard.

The information that the Receiver did provide in his Final Accounting is similarly inadequate. The Receiver lists the "Total Receivership Recoveries" by identifying 31 different entities on Schedule I, with a corresponding dollar amount as to each, and which resulted in only $38 million to the victims. Contrary to accepted standards for a final account, the Receiver did not provide an accounting as to each entity. Nor did he list any specific property received, abandoned, or distributions made on behalf of each entity. As judgment creditors, Appellants are severely prejudiced by the utter absence of such basic information.

***Second***, the district court approved the settlement of a lawsuit that the Receiver brought against JPMorgan without requiring the Receiver to identify the entities the lawsuit was brought on behalf of, and then barred any claims that were derivative of those same unidentified entities. The Receiver and his counsel offered conflicting statements at the motion hearing to approve the settlement. Counsel indicated the lawsuit was brought on behalf of "dozens of entities" in the Receivership in their capacity as creditors of Petters. The Receiver, personally, stated that the lawsuit was brought on behalf of the Government or victims. Either way, it remains unclear

whether the Receiver ever had standing to bring such a suit against JPMorgan. If the Receiver did not have standing to bring the suit, then the district court did not have subject matter jurisdiction to enter an order barring derivative claims. At the very least, the Bar Order cannot be enforced without ascertaining who the Receiver commenced the lawsuit on behalf of in the first place.

## ARGUMENT

### I. THIS MATTER MUST BE REMANDED TO THE DISTRICT COURT WITH INSTRUCTIONS FOR THE RECEIVER TO PERFORM A SATISFACTORY FINAL ACCOUNTING, IDENTIFY THE ENTITIES IT WAS ACTING AS THE RECEIVER FOR, AND MAKE AVAILABLE RELEVANT DOCUMENTS TO INTERESTED PARTIES

This Court reviews the district court's oversight of a receiver for abuse of discretion. *S.E.C. v. Quan*, 870 F.3d 754, 759 (8th Cir. 2017). The district court abused its discretion in approving the Receiver's perfunctory final accounting and discharging the Receiver for three independent reasons: (a) the final accounting is woefully inadequate in that it fails to meet any minimum standard; (b) the Receiver never identified the precise receivership entities whose property was taken into his custody and the precise entities that it was acting on behalf of in commencing fraudulent transfer actions; and (c) the district court vested a discharged Receiver with unilateral control over Receivership books, records and other property (including stock certificates and evidence of equity interests) with unfettered discretion to control access and charge whatever rate he deems appropriate to access such books, records, and property.

## A.  The Final Accounting is Woefully Inadequate, and the District Court Abused its Discretion in Approving the Final Accounting

It is well-established that a receiver is "required to make a strict accounting to the court of the results of his stewardship." Emil F. Bohne, *Accounting for Receiverships*, The University Journal of Business, Vol. 2, No. 2, at 200 (1994); *see, e.g.*, *In re Sundance Corp., Inc.*, 149 B.R. 641, 653 (Bankr. E.D. Wash. 1993) ("A receiver must account for its stewardship of the receivership assets."). This Court has not articulated a clear standard for what a receiver must include in a final account. But under any conceivable standard, this final accounting would fall short.

Federal Rule of Civil Procedure 66 provides that "the practice in administering an estate by a receiver or similar court-appointed officer must accord with the historical practice in federal courts or with a local rule." There is limited authority in the Eighth Circuit (or elsewhere) delineating the "historical practice" for an equity receivership, let alone a receivership as a remedy for a multi-billion-dollar Ponzi scheme like the one Petters operated. *Cf. S.E.C. v. Hardy*, 803 F.2d 1034, 1037 (9th Cir. 1986) ("[C]ase law involving district court administration of an equity receivership (once the receivership is underway) is sparse and is usually limited to the facts of the particular case.").

Nevertheless, this Court posited long ago that "[i]t is one of the indispensable personal duties of a receiver and of a master to make a report his acts, and of his disbursements, to the court which appoints him. If he is incapable of keeping accounts and of reporting his receipts and disbursements, he ought not to accept the

Appellate Case: 21-2973    Page: 31    Date Filed: 11/18/2021 Entry ID: 5099364

appointment." *Wilkinson v. Washington Tr. Co. of City of New York*, 102 F. 28, 30 (8th Cir. 1900). But if the receiver does accept appointment, "and his reports, like those at hand, involve nothing more than a simple narrative of his acts, and an account of his receipts and disbursements, he cannot be permitted to receive compensation for the discharge of these, his personal duties as receiver." *Id.* In other words, it is not only reasonable to expect, but also a requirement under the law, that a receiver provide a final accounting that affords interested persons and the court a basic of understanding of what occurred during the Receivership.

This theory is reflected in *Mechanics' Trust Co of Harrisburg, Pa. v. Ensminger Lumber Co.*, 27 F.2d 877, 880 (3d Cir. 1928). There, the Third Circuit Court of Appeals, in reversing the district court's approval of a final accounting, explained that an interested party "is entitled to know *exactly* what the receiver[] did" and that the receiver should "file an account with sufficient detail and sufficiently itemized to give the appellant accurate and full information as to their conduct of the business of this company." 27 F.2d at 880 (emphasis added). Other jurisdictions have also endorsed the basic principle that "the purpose of an account is to enable interested parties, and the court, to ascertain what the receiver has done in administering the estate (and why), and what is the present situation thereto, and to determine whether the receiver has properly executed his trust." *Mitschele v. Meadow Brook Inv. Corp.*, 197 A. 31, 33 (N.J. Ch. 1938); *accord Weber v. Empire Holding Corp.*, 149 Or. 503, 508, 41 P.2d 1084, 1086 (1935). A final accounting must identify the source of money received, the property for which the money was paid,

Appellate Case: 21-2973     Page: 32     Date Filed: 11/18/2021 Entry ID: 5099364

the reason for the payments, and "should allow a reviewing court to readily understand what has occurred in connection with the corporation's property up to the date of filing the report." *Dickie v. Flamme Bros.*, 251 Neb. 910, 917, 560 N.W.2d 762, 767 (1997).

The Receiver's vague, ambiguous, incomplete, and unsworn final accounting does not afford interested persons or the court even a rudimentary understanding of what occurred during the Receivership. Despite claiming to be appointed as the receiver of the property of more than 150 entities that were 100% owned or controlled by Petters, PCI, or PGW, the Final Accounting identifies only 31 entities. The Final Accounting does not include any description of any specific article of property that was owned by any of those entities, or provide a list of any specific property disposed of. Instead, Schedule I consists of a list of names paired with a number corresponding to what is called a "receivership recovery."

This Final Accounting stands in stark contrast to those final accountings which should be, or have been, approved. *Cf. Hennepin County v. M.W. Savage Factories*, 83 F.2d 453, 454 (8th Cir. 1936) (explaining that the receiver's final account, approved by the district court, identified specific assets and liabilities such as accrued taxes); Bohne, *supra*, at 207 (explaining that the strict accounting a receiver is required to make should include, at a minimum, a schedule of assets and liabilities); H.C. Freeman, *Accounting for Receiverships*, Journal of Accountancy, pp. 234-65 (Oct. 1917). The United States Congress has codified such a standard with respect to a receiver utilized by the court in connection with a federal debt. *See* 28 U.S.C. § 3103(d) ("A receiver shall keep written

23

accounts itemizing receipts and expenditures, ***describing the property*** and naming the depository of receivership funds." (emphasis added)); 28 U.S.C. § 3103(g) ("At the termination of a receivership, the receiver shall file a final accounting of the receipts and disbursements ….").

Again, the Receiver listed only 31 of the more than 150 entities whose assets were taken into the custody of the district court with no specific receipts or disbursements, but merely total "recoveries." [App. 530, R.Doc. 3235-1 at 2.] For comparison, the final report filed by Trustee John Stoebner as to just one of the ten Polaroid entities[7] to which he served as Bankruptcy Trustee is included in the record on appeal. [App. 569-1077, R. Doc. 3422 (08-br-46617).] There—in Trustee Stoebner's sworn 508-page report—are listed all expenses, disbursements, liabilities, property that was taken into custody, as well as the property that was abandoned. [*See generally id.*]

By contrast, the Receiver's report lists no specific property owned by any particular entity that he took custody of and does not disclose what, if anything, the Receiver did with that property. Nor does the Final Accounting disclose any property or assets that were abandoned. This is important information that must be disclosed

---

[7] These entities include: Polaroid Holding Company (Case No. 08-46221); Polaroid Corporation (Case No. 08-46617); Polaroid Consumer Electronics LLC (Case No. 08-46620); Polaroid Capital, LLC (Case No. 08-46623); Polaroid Latin America I Corporation (Case No. 08-46624); Polaroid Asia Pacific LLC (Case No. 08-46625); Polaroid International Holding LLC (Case No. 08-46626); Polaroid New Bedford Real Estate LLC (Case No. 08-46627); Polaroid Norwood Real Estate LLC (Case No. 08-46628); Polaroid Waltham Real Estate LLC (Case No. 08-46629).

Appellate Case: 21-2973     Page: 34     Date Filed: 11/18/2021 Entry ID: 5099364

because, given Appellants' status as judgment lien creditors of Petters, they could foreclose their judgment liens on any assets of Petters that have been abandoned by the Receiver. As this Court has observed, the receiver could have abandoned property if "he had thought the equity a burdensome asset" for some reason such as potential taxes or maintenance. *See M.W. Savage Factories*, 83 F.2d at 455 (quoting *MacGregor v. Johnson-Cowdin-Emmerich, Inc.*, 39 F.2d 574, 576 (2d Cir. 1930) (Hand, J.)).

Even if the Receiver is not required to file a Final Accounting with the same level of detail as Trustee Stoebner's 508-page report (although one might reasonably have expected a *more* detailed report, given the size and scope of this Receivership), the Final Accounting of both the General and Individual Receiverships falls short of any standard this Court could possibly endorse. *Cf. S.E.C. v. Harris*, No. 3:09-CV-01809, 2015 WL 418107, at *2 (N.D. Tex. Feb. 2, 2015) (ordering receiver to provide a more detailed report because receiver failed to satisfy fundamental duty to timely account for all monies, securities, and other properties).

The Receiver's report is replete with specific examples of inadequate disclosure, including recoveries from "Polaroid," Thomas Petters, Inc., and EBP Select Holdings. [App. 529, R.Doc. 3235-1 at 1.] First, the largest recovery listed on Schedule I of the Final Accounting is a $45,060,000 recovery from "Polaroid." [App. 529, R.Doc. 3235-1 at 1.] "Polaroid," however, is not an entity. Trustee Stoebner was appointed as the Trustee of ten different Polaroid entities. Interested parties and the Court should not

25

Appellate Case: 21-2973    Page: 35    Date Filed: 11/18/2021 Entry ID: 5099364

have to guess which Polaroid entity received the recovery and who paid for and sourced the recovery.

Second, the Receiver also identified a recovery from Thomas Petters, Inc., but never accounted for any specific item of property the Receiver took custody of, what the financials were, or any assets that were abandoned. [App. 529, R.Doc. 3235-1 at 1.] While the Receiver listed a recovery of $833,493.18, there is no accounting, tracing, identification of assets recovered or liquidated, and no way to determine how the money was received or by whom. Thomas Petters, Inc.—through Kelley—filed for bankruptcy on September 17, 2014. [R.Doc. 1 (14-br-43791).] Accepting the Receiver's representations at the hearing on the motion to approve the final accounting would mean that Thomas Petters, Inc. was not a receivership entity. [App. 1145-1146, R.Doc. 3272 at 39-40.] Yet, Thomas Petters, Inc. is listed on Schedule I of the Receiver's Final Accounting for receivership recoveries.

As a third example of an inadequate disclosure, the Receiver identified a recovery of $15,279,024.78 from an entity he describes only as EBP Select Holdings. [App. 529, R.Doc. 3235-1 at 1.] But the legal name of the entity is not listed. We assume (as we must) that the recovery refers to EBP Select Holdings, LLC, which was organized in Delaware in April of 2007.[8] But the recovery also could have come from "EBP Select

---

[8] The only status reports to mention EBP Select Holdings, LLC do not offer any additional clarification as to the Receiver's $15,279,024.78 recovery. On January 17, 2018, the Receiver filed a status report with the district court indicating that the Receiver forfeited the interests of Defendants Deanna Coleman and James Wehmhoff in EBP

Appellate Case: 21-2973    Page: 36    Date Filed: 11/18/2021 Entry ID: 5099364

Holdings, Inc." [R.Doc. 1859 (Affidavit of Receiver in support of a motion to approve a settlement between Douglas A. Kelley (as the Receiver for EBP Select Holdings, Inc.) and the Chapter 11 Trustee for Petters Company, Inc. and Theodore Deikel).] Aside from not knowing which EBP entity (or both) is referenced here, it is unclear whether this recovery came from the liquidation of property owned by EBP Select Holdings or from the Receiver's liquidation of the LLC Interests of EBP Select Holdings that were property of the Individual Receivership of Thomas J. Petters. Due to the district court's failure to establish a claims process for creditors of Thomas J. Petters, interested parties were not allowed to appear or object to the disposition. At a minimum, the Final Accounting should provide details for transactions such as these.

As in *Mechanics' Trust Co of Harrisburg, Pa.*, the Receiver's Final Accounting is improper because, in most instances, it lists disbursements made, without indicating when, to whom, and for what. 27 F.2d at 880. Likewise, the Receiver, rather than provide even minimal detail, simply recorded 31 entities on Schedule I and the total amount of "receivership recoveries." [App. 530, R.Doc. 3235-1 at 2.] The Receiver should have, as the Second Circuit Court of Appeals has counseled, "filed separate accounts for each of the companies in the receivership." *Phelan v. Middle States Oil Corp.*,

---

Select Holdings LLC, in an amount of $702,443.72 to "the government." [R.Doc. 2974 at 2-3.] On March 13, 2013, the Receiver filed another status report with the district court, which indicated the Receiver has forfeited to the U.S. Marshals Service fund from EBP Select Holding LLC in the amount of $10,042,050.84. [R.Doc. 3079.]

Appellate Case: 21-2973   Page: 37   Date Filed: 11/18/2021 Entry ID: 5099364

154 F.2d 978, 988-89 (2d Cir. 1946). Instead, the Receiver asked the district court to rubber-stamp his perfunctory, unsworn final accounting without considering the possibility of inaccuracy through oversight, error, or otherwise.[9] The district court did so despite this Court's observation that "a receiver, an officer of the court, is human and liable to err."[10] *Missouri & K.I. Ry. Co. v. Edson*, 224 F. 79, 83 (8th Cir. 1915).

The shortcomings in the Final Accounting to do not end there. The Receiver's Final Accounting has a line item for "Additional Kelley Controlled/Influenced Distributions: $381,434,146.13." [App. 522, R.Doc. 3235 at 6(c).] This "includes creditor settlement distributions, lender settlement distributions, payments to related parties, and distributions to victims and creditors of the PCI Liquidating Trust." [App. 522, R.Doc. 3235 at 6(c).] This section generates more questions than answers. What are "Kelley Controlled/Influenced Distributions"? Why are they accounted for in the Receivership accounting? Payments to which "related parties" and for what reasons?

The Receiver's Final Accounting also fails to account for the $4,657,003.27 held by JPMorgan as personal property of Petters. In May 2018, the Receiver's settlement

---

[9] Many jurisdictions, like Minnesota, require a receiver to take receipt for all disbursements made, and requiring that the receiver "shall recite such filing in a **verified petition** for the allowance of such account." Minn. Gen. R. Prac. 137.10 (emphasis added).

[10] The Receiver's statement at the hearing on the motion to approve the final accounting is emblematic of this inordinate deference. The Receiver asserted that victims have recovered "north of 30 percent," and the district court incorporated that statement into the order despite nothing to that effect appearing in the Receiver's moving papers or elsewhere in the record.

Appellate Case: 21-2973     Page: 38     Date Filed: 11/18/2021 Entry ID: 5099364

agreement with JPMorgan provided that, in exchange for paying $2.5 million, JPMorgan would be allowed to "retain its lien" on funds in the amount of $4,657,003.27 that were referred to as "Liquidation Proceeds" from JPMorgan Chase Bank, N.A.'s liquidation of financial assets owned by Petters that were credited to his investment accounts as of October 14, 2008. [App. 247, R.Doc. 2980-1 at 22.] Appellants objected to the settlement, and specifically objected to the Receiver allowing JPMorgan to "retain its lien" on "Liquidation Proceeds." [App. 293-296, R.Doc. 2984 at 15-18.] The district court approved the settlement over these objections. [ADD-1.] The Receiver's Final Accounting of the Individual Receivership omits to disclose the facts relating to the disposition of the Liquidation Proceeds or the amount of debt that Petters owed to JPMorgan, the payment of which could have been secured by a lien on the Liquidation Proceeds. In their objection to the Final Accounting, Appellants again objected to allowing JPMorgan to retain its lien on the $4,657,003.27 held in its custody and objected to the Receiver's failure to account for the Liquidation Proceeds in the final accounting of the Individual Receivership. [App. 551-553, R.Doc. 3240 at 18-20.] These objections were rejected.

The district court abused its discretion in approving the Receiver's inadequate, vague, ambiguous, and misleading Final Accounting. The Receiver is a fiduciary and a professional—one that has been paid handsomely to fulfill those roles. Out of $11,876,688.17 expended on legal services, the Receiver and his firm received over $7.5 million. [App. 529, R.Doc. 3235-1 at 1.] And this does not include the additional

29

millions of dollars in fees the Receiver and his firm were paid out of the bankruptcy estates. This Court should remand this matter with instructions for the Receiver to file a more thorough report after 13 years of General and Individual Receiverships of this size and scope.

## B. The District Court Abused its Discretion by Discharging the Receiver Without Ever Requiring the Receiver to Identify with Particularity the Precise Receivership Entities Whose Property was Taken into Custody by the District Court

In addition to providing inadequate detail and failing to list specific property received and disbursements from the liquidation of the property owned by only 31 of at least 150 different entities whose property was taken into the custody of the district court, the Receiver's report failed in another fundamental respect. The Receiver never identified all of the entities whose assets he took custody of in his capacity as the Receiver, despite Appellants' repeated demands to do so.[11] Perhaps it is because the Receiver does not know. Whatever the reason, it should not be a controversial position to ask the Receiver to at least simply identify the entities for whose property he was allegedly appointed as the Receiver, given that the appointment of a Receiver is

---

[11] For example, the receivership Order entered on December 8, 2008 includes "Thomas Petters, Inc. and its subsidiaries, including but not limited to MN Airlines, LLC dba Sun Country" in the definitions of "Subsequent Receivership Defendants" and "Defendants." [App. 56-57, R.Doc. 127 at 4-5.] The Final Accounting does not identify all of the subsidiaries of Thomas Petters, Inc. (as that term is used in the receivership order that was entered on December 8, 2008), and does not provide an accounting of any property of any of these "subsidiaries" that came into the custody of the Receiver.

Appellate Case: 21-2973     Page: 40     Date Filed: 11/18/2021 Entry ID: 5099364

inherently limited by the jurisdictional constraints of Article III and all other curbs on federal jurisdiction. *See Scholes v. Schroeder*, 744 F. Supp. 1419, 1421 (N.D. Ill. 1990). If the Receiver "is incapable of keeping accounts and of reporting his receipts and disbursements, he ought not to accept the appointment." *Wilkinson*, 102 F. at 30 (8th Cir. 1900).

The Second Receivership Order appointed Kelley as the Receiver of the property assets the individual "Defendants," including Petters, and any "entity" 100% owned or controlled by Petters. Neither the district court nor the Receiver ***ever*** identified all of the entities 100% owned or controlled by Petters, and no beginning inventory of the property and assets of each Receivership "entity" was ever prepared.

In a November 2010 Order, the district court explained that the "scope of the receivership includes, *inter alia*, all entities 100% owned or controlled by Defendant Petters." [R.Doc. 1608, at 4.] The district court noted that "[a]t least sixty entities were 100% owned or controlled by Defendant Petters." [*Id.*] More than a decade later, at the 2021 hearing on the motion to approve the Final Accounting—in response to Appellants' continued demand to hold an evidentiary hearing and identify the Receivership entities—counsel for the Receiver indicated that if you take the organizational charts with 150 entities, that is "not sworn or verified" and you "pull out the entities that are in bankruptcy," then "virtually every other entity on the chart is in the receivership except perhaps one or two or three." [App. 1128-1129, R.Doc. 3272 at 22-23.] This does not (and cannot) sufficiently identify the entities whose property was

taken into the custody of the district court and does not account for the district court's prior reference to 60 entities that were 100% owned or controlled by Defendant Petters.

The identity of the entities whose property was taken into custody should not be a secret. As an officer of the district court, a Receiver is a trustee with "the highest kind of fiduciary duties" and owes a duty of loyalty to all persons interested in the Receivership estate. *Phelan*, 154 F.2d at 991. A receiver is "bound to act fairly and openly with respect to every aspect of the proceedings before the court." *Id.* After 13 years and property worth hundreds of millions of dollars being liquidated and only $38 million being distributed to selected victims, this Court should require more than general summation and guesswork. This Court should require that all Receivership "entities" be listed with sufficient detail as to the disposition of their assets and abandonment of assets akin to what is required of Chapter 7 trustees.

C.     **The District Court Abused Its Discretion in Approving the Receiver's Proposed Procedure for Record Retention and Document Destruction**

The district court abused its discretion by approving the Receiver's proposed procedure for his retention of books and records owned by Petters. Several courts permit the property to be returned to the owner upon termination of the receivership. *E.g.*, *Global NAPs, Inc. v. Verizon New England, Inc.*, 389 F. Supp. 3d 144, 145-45 (D. Mass. 2019); *United States v. Bradley*, No. CR 405-059, 2019 WL 1903413, at *3 (S.D. Ga.

Apr. 29, 2019). Here, the district court erred by ruling that the discharged Receiver shall retain possession of all the property belonging to Petters.

An interested party should be allowed to access the Receiver's database of information at no cost. The database was paid for with monies from the liquidation of the undefined entities' property. According to the Final Accounting filed, $15,123,938.08 was paid in "finance and advisory fees". [App. 529, R.Doc. 3235-1 at 1.] As the Second Circuit Court of Appeals opined in *Phelan v. Middle States Oil Corp.*, "We think that undoubtedly, in connection with the receivers' final accounting and discharge, appellants should have access to the engineers' and accountants' reports and, indeed, to anything in the books and papers in the hands of the receivers." 154 F.2d at 1003.

The Receiver requested "fees and costs relating to responding to form and information document requests and other inquiries with respect to books and records of the Receivership," [App. 523, R.Doc. 3235 at 7], yet the district court also granted the Receiver unfettered discretion to charge persons whatever rate the Receiver deems appropriate to access documents. Victims of a crime should not have to pay to access documents that were obtained at the victims' expense—especially when the district court compensated the Receiver to respond to such requests. And the Receiver should not have unilateral authority over documents for a receivership which has ended. *See* 28 U.S.C. § 3103(d) ("The receiver's accounts shall be open to inspection by any person having an apparent interest in the property.")

33

The district court imposed one of the longest anti-litigation injunctions in the history of the United States that prevented the Appellants from continuing the action they started in Illinois State Court on September 30, 2008. It would be a manifest injustice to allow the Receiver unfettered discretion over the documents and property obtained now that Appellants are judgment creditors. The Receiver acknowledges obtaining numerous information "by serving subpoenas on banks, individuals, and corporations." [App. 519, R.Doc. 3235 at 3.] Interested parties, and now judgment creditors, such as Appellants, who, for more than a decade, have been precluded from serving similar discovery due to the litigation stay should now be afforded access to this information. The Receivership is terminated. One bank has already been sanctioned in related litigation for destroying documents [*Kelley v. BMO Harris Bank, N.A.*, R.Doc. 354 (12-br-4288)], and the discharged Receiver is the only entity that has possession of the information and yet there is no fair process to access it.

In short, the Receiver's approved procedures require a judgment creditor holding a judicial lien to pay in advance for access to books and records that are (a) maintained in a receivership that no longer exists; (b) overseen by a discharged receiver vested with unlimited discretion over whether to produce anything; (c) produced, if at all, only through a process that interested parties have no insight into; and (d) apparently not the subject of any judicial remedy in the event of a dispute. This Court should order the district court to allow access to any books, records or any documents assembled during the Receivership at no cost.

Appellate Case: 21-2973    Page: 44    Date Filed: 11/18/2021 Entry ID: 5099364

## II. THE DISTRICT COURT ABUSED ITS DISCRETION BY APPROVING THE RECEIVER'S SETTLEMENT WITH JPMORGAN AND THIS COURT SHOULD VACATE THE BAR ORDER BECAUSE IT IS A BLATANT DUE PROCESS VIOLATION AND THE DISTRICT COURT DID NOT HAVE SUBJECT MATTER JURISDICTION

The Bar Order must be vacated because it violates Appellants' due process rights. The district court erred in approving the settlement of a matter that the Receiver had no standing to bring and by barring Appellants' causes of action against JPMorgan as derivative of the claims asserted by the unidentified entities in Receivership action, despite Appellants' receiving no portion of that settlement.

### A. Appellants' Due Process Rights Were Violated by the Bar Order

While this Court generally reviews a district court's supervision of an equity receiver for abuse of discretion, *Quan*, 870 F.3d at 759, it reviews due process claims de novo. *See Coal. for Fair and Equitable Regulation of Docks on Lake of the Ozarks v. Fed. Energy Regulatory Comm'n*, 297 F.3d 771, 778 (8th Cir. 2002) ("[W]e review de novo constitutional questions, such as … due process claims.").

It is well-established that there is a "fundamental constitutional right of access to the courts." *Bounds v. Smith*, 430 U.S. 817, 828 (1977). The right to seek a remedy is, according to the Supreme Court, a principle that "lies at the heart of all well-ordered systems of jurisprudence … founded in the first principles of natural justice". *Windsor v. McVeigh*, 93 U.S. 274, 280 (1876). For absent parties to be bound by an order of the court, there must be a process in place that fairly protects the interests of those absent

Appellate Case: 21-2973    Page: 45    Date Filed: 11/18/2021 Entry ID: 5099364

parties. *See Hansberry v. Lee*, 311 U.S. 32, 42 (1940) ("[T]here has been a failure of due process only in those cases where it cannot be said that the procedure adopted fairly insures the protection of the interests of absent parties who are to be bound by it.").

The relevant considerations for a due process analysis are whether a party was deprived of a protected interest and, if so, what process was due. *Post v. Harper*, 980 F.2d 491, 493 (8th Cir. 1992). Due Process requires meaningful notice and meaningful procedures. *United States v. Ritchie Special Credit Inv., Ltd.*, 620 F.3d 824, 835 (8th Cir. 2010) (citing *Matthews v. Eldridge*, 424 U.S. 319, 332-33 (1976)). This Court "recognize[s] that a cause of action is a property interest protected by the Due Process Clause." *Schneider v. United States*, 27 F.3d 1327, 1333 (8th Cir. 1994).

The Fifth Circuit Court of Appeals, in *Zacarias v. Stanford International Bank, Ltd.*, is the latest federal court to address the constitutionality of third-party bar orders entered in conjunction with a federal equity receiver's settlement with a third party. 945 F.3d 883 (5th Cir. 2019). There, the court upheld the district court's bar order enjoining a state court suit against third-party defendants with whom the receiver was also engaged in litigation. *Id.* at 897. But the critical justification for the upholding the bar order was that the objecting investors were allowed to participate in the receivership claims process, collecting a pro rata share of the funds recovered by the receiver upon his settlement with the common defendants. *Id.* at 902. The court explained that the plaintiffs-objectors were not deprived of their property (claims) without due process and just compensation, because they were provided with notice and opportunity to be

36

heard, and they were not deprived of any entitlement to recovery because they were afforded an opportunity to submit proofs of claim, and to dispute the receiver's disposition of their entitlements within the receivership's judicial distribution procedures. *Id.* at 903.

Here, however, the district court and Receiver did not establish a claims process for creditors of Petters. Appellants did not receive any share of the $2.5 million settlement, pro rata or otherwise. Instead, the Receiver remitted the funds to the United States, which were forfeited as "substitute res" in a separate proceeding in the criminal case. [R.Doc. 671 (08-cr-364), Final Order of Forfeiture.] And, ultimately, the district court in Appellants' suit against JPMorgan applied the Bar Order to Appellants' fraudulent transfer claims that were originally commenced in New York state court in 2014. *Ritchie Special Credit Inv., Ltd. v. JPMorgan Chase & Co.*, No. 14-cv-4786, 2021 WL 2686079, at *6 (D. Minn. June 30, 2021). In short, the district court's approval of the settlement between the Receiver and JPMorgan effectively barred Appellants' fraudulent transfer claims against JPMorgan, thereby depriving Appellants of their property interest in those causes of action, without providing any meaningful due process of law (including the identification of the entity that was the predicate creditor who had standing) and without "any just compensation" such as a share in the settlement proceeds.

Appellate Case: 21-2973    Page: 47    Date Filed: 11/18/2021 Entry ID: 5099364

If Appellants' causes of action against JPMorgan were indeed derivative, and therefore barred, due process requires that Appellants share in the settlement proceeds or the Bar Order must be vacated.

Furthermore, the Bar Order cannot be enforced because it is impermissibly vague. Basic fairness requires that those enjoined receive explicit notice of precisely what conduct is enjoined. *Schmidt v. Lessard*, 414 U.S. 473, 476 (1974). "An order which does not satisfy the requirement of specificity and definiteness will not withstand appellate scrutiny." *Corning Inc. v. PicVue Electronics, Ltd.*, 365 F.3d 156 (2d Cir. 2004) (quotation omitted); *see also Inst. of Cetacean Research v. Sea Shepherd Conservation Soc'y*, 774 F.3d 935, 953 (9th Cir. 2014) (noting the "well-established rule that a 'vague' order may not be enforced"); Fed. R. Civ. P. 65(d) (every order granting an injunction "shall be specific in terms" and "shall describe in reasonable detail" the acts restrained).

The breadth of the Bar Order is astounding:

> Any and all Petters Creditors, anyone acting on behalf of or in concert or participation with any of the Petters Creditors, or anyone whose Claim in any way arises from or is related to the Receivership Individuals & Entities, the Receivership Estates, Thomas J. Petters, and/or Petters' Ponzi Scheme is barred and permanently enjoined from asserting or prosecuting any Claim that belongs or belonged to the Receiver, whether or not already asserted by the Receiver, or is derivative of such a Claim, whether denominated in tort, unjust enrichment, or otherwise, and including but not limited to Claims for fraudulent transfer, against any of the Entity Defendant Released Parties and Individual Defendant Released Parties ("the Barred Claims.").

[ADD-4-5.]

The district court erred by barring "derivative" claims without defining or applying the correct standard of what constitutes a "derivative" or "direct" claim. The district court's injunction is not enforceable because the Order does not clearly define what conduct is enjoined. Given that the district court never required the Receiver to identify the entities in the Receivership, let alone the specific entities its lawsuit against JPMorgan was brought on behalf of, the Bar Order enjoins claims that are derivative of those owned by unidentified entities. Therefore, this Court must vacate the Bar Order.

## B. The District Court Did Not Have Subject Matter Jurisdiction to Enter the May 21, 2018 Bar Order

Alternatively, the Bar Order must be vacated because the district court did not have jurisdiction to adjudicate the Receiver's fraudulent transfer claims against JPMorgan. Nor did the district court have subject matter jurisdiction to adjudicate Appellants' independent claims against JPMorgan, because those claims are distinct from the Receiver's and were not before the court. *See Zacarias*, 945 F.3d at 905-06 (Willett, J., dissenting).

Standing is an issue of subject-matter jurisdiction, which can never be waived or forfeited. *Dalton v. NPC Int'l, Inc.*, 922 F.3d 693, 698 (8th Cir. 2019); *Auer v. Trans Union, LLC*, 902 F.3d 873, 877 (8th Cir. 2018). "[A]n equity receiver, like a bankruptcy trustee, lacks authority to bring a claim directly on behalf of the debtor's creditors, the victims of the Ponzi scheme." David A. Gradwohl & Karin Corbett, *Equity Receiverships for Ponzi*

*Schemes*, 34 Seton Hall Legis. J. 181, 205 (2010) (citing *Caplin v. Marine Midland Trust Co.*, 406 U.S. 416, 421-34 (1972)). "In other words, the powers of the equity receiver do not extend to taking the causes of action which belong to the victims of the Ponzi scheme and pursuing them, even though any recovery by the equity receiver would theoretically benefit the estate of the entity and ultimately all of the victims." *Id.* at 205-206 (summarizing controlling authority).

The elements of a fraudulent transfer claim serve as the starting point for the standing analysis. Only a creditor of Petters has standing to bring an action to avoid a fraudulent transfer of Petters's property. *See Eberhard v. Marcu,* 530 F.3d 122 (2d Cir. 2008). Here, the 2010 Receivership Complaint against JPMorgan does not state a claim for any right to the payment of money from Petters. An action to avoid a fraudulent transfer of interests in Petters's property, cannot be made by Petters himself or by a Receiver who steps into his shoes. *Id.* at 131 (there is "no doubt that a transferor cannot set aside a disposition of assets on the ground that the disposition allegedly constituted a fraudulent transfer").

Because the district court never required the Receiver to identify the entities that it was suing on behalf of, it remains unclear how the Receiver may have had standing to assert a fraudulent transfer claim against JPMorgan. The Receiver claimed in its briefing to approve the settlement: "Dozens of entities owned or controlled by Thomas Petters are also in the Receivership, and it is on their behalf as creditors of Thomas Petters that the Receiver brought the fraudulent transfer claims against JPMorgan."

Appellate Case: 21-2973   Page: 50   Date Filed: 11/18/2021 Entry ID: 5099364

[App. 408, R.Doc. 2986 at 7.] This certainly does not clarify on whose behalf the Receiver brought the lawsuit. At the hearing on the Receiver's motion to approve the settlement and for entry of the Bar Order, the Receiver and his attorney provided conflicting answers as to who the suit seeking to avoid fraudulent transfers of interests of Petters's property was commenced on behalf of and who would receive the $2.5 million settlement monies. The Receiver announced in court that the suit against JPMorgan was always for the benefit of the Government and the victims. [App. 440, R.Doc. 2977 at 21.] This judicial admission nullifies the Receiver's standing to bring fraudulent transfer claims against JPMorgan.

If the Receiver was indeed suing on behalf of "[d]ozens of entities controlled by Thomas Petters," the $2.5 million should have been paid to those unidentified entities and their creditors. Instead, the Receiver distributed those funds to the United States Marshal's Service, and the United States filed a motion to allow the $2.5 million settlement to be considered "substitute res". [R.Doc. 671 (08-cr-364), Final Order of Forfeiture.] This is further evidence that the Receiver lacked standing to sue JPMorgan. Stated alternatively, forfeiting the $2.5 million as "substitute res" is a judicial finding that the $2.5 million was property of the Individual Receivership of Petters and precludes any finding that the Receiver had standing to sue to avoid a fraudulent transfer. Since the district court permitted the $2.5 million in settlement funds to be distributed to the United States Marshal's Service rather than the Receivership entities and creditors of Petters that the Receiver purportedly sued on behalf of [A-449], the

Receiver lacked standing to sue JPMorgan as a matter of law, which justifies vacating the Bar Order for lack of subject matter jurisdiction.

## <u>CONCLUSION</u>

This Court should remand this matter with instructions for the Receiver to provide an adequate Final Accounting for the Individual Receivership and General Receivership, including identification of the entities the Receiver acted on behalf of and the precise property that was disposed of, or abandoned. Further, this Court should not allow a discharged Receiver to retain property of Petters that is subject to Illinois state court judgment liens and should not allow a discharged Receiver to retain the books and records of Petters's personal property and of all the entities that were 100% owned by Petters as of October 10, 2008. Finally, this Court should vacate the May 21, 2018 Bar Order because the district court did not have subject matter jurisdiction to bar claims not before the court and the Bar Order violates Appellants' due process rights.

Respectfully submitted,

Date: November 18, 2021

/s/ *Patrick H. O'Neill, Jr.*
Patrick H. O'Neill, Jr. (MN #0207950)
Jason T. Johnson (MN #0399974)
LARSON • KING, LLP
30 East Seventh Street, Ste. 2800
Saint Paul, MN 55101
(651) 312-6500 | Fax: (651) 312-6618
poneill@larsonking.com
jjohnson@larsonking.com
*Attorneys for Appellants*

42

# CERTIFICATE OF COMPLIANCE

1.     This brief complies with the type volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 10,863 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 365 in Garamond, 14-point font.

3.     Pursuant to Circuit Rule 28A(h), I also hereby certify that electronic files of this brief and accompanying Addendum have been submitted to the Clerk in searchable PDF Format via the Court's CM/ECF system. The files have been scanned for viruses and are virus free.

/s/ *Patrick H. O'Neill, Jr.*
Patrick H. O'Neill, Jr. (MN #0207950)
Jason T. Johnson (MN #0399974)

43

## CERTIFICATE OF SERVICE

I hereby certify that on November 4, 2021 a copy of the attached Brief for Appellants was filed with the Clerk and served on the parties through the Court's electronic filing system. I further certify that all parties required to be served have been served.

/s/ *Patrick H. O'Neill, Jr.*
Patrick H. O'Neill, Jr. (MN #0207950)
Jason T. Johnson (MN #0399974)