No. 21-2973

# In the
# United States Court of Appeals
# for the Eighth Circuit

UNITED STATES OF AMERICA

*Plaintiff-Appellee,*

and

DOUGLAS A. KELLEY,

*Receiver-Appellee,*

v.

RITCHIE CAPITAL MANAGEMENT, L.L.C., RITCHIE SPECIAL CREDIT INVESTMENTS, LTD., RHONE HOLDINGS II. LTD., YORKVILLE INVESTMENTS I, LTD., AND RITCHIE CAPITAL MANAGEMENT SEZC, LTD. F/K/A RITCHIE CAPITAL MANAGEMENT, LTD.,

*Intervenors-Appellants.*

On Appeal from the United States District Court for the
District of Minnesota, Case No. 08-cv-5348 (ADM/TNL)
Ann D. Montgomery, *District Judge*

## BRIEF OF APPELLEES UNITED STATES OF AMERICA
## AND RECEIVER DOUGLAS A. KELLEY

Gregory G. Brooker
Assistant United States Attorney
United States Attorney's Office
District of Minnesota
300 South 4th Street, Ste. 600
Minneapolis, MN 55415
Tel: (612) 664-5600

James A. Lodoen
Jessica J. Nelson
SPENCER FANE LLP
100 South Fifth St., Ste. 2500
Minneapolis, MN 55402
Tel: (612) 268-7000

Steven E. Wolter
KELLEY, WOLTER & SCOTT, P.A.
431 S. Seventh St., Ste. 2530
Minneapolis, MN 55415
Tel: (612) 371-9090

## SUMMARY OF THE CASE

The moment the Petters fraud scheme collapsed in September 2008, Ritchie embarked on a litigation campaign to line its own pockets to the detriment of other victims and creditors. Ritchie unsuccessfully sought its own receivership over Thomas Petters in Cook County, Illinois, and commenced litigation seeking to recover the *same* property from the *same* parties against whom the Receiver and the bankruptcy trustees have pursued claims. Ritchie's litigious efforts have been halted at every step. Ritchie twice unsuccessfully sought to lift a litigation stay in the Receivership court to seek a judgment against Thomas Petters. In exchange for the Government and Receiver's promise not to oppose Ritchie's third attempt to lift the stay, Ritchie promised the parties and district court to take no further action in the Receivership. Despite this promise, Ritchie now appeals, seeking to unravel the Receiver's settlement with JPMorgan and overturn the district court's approval of the final accounting and termination of the Receivership. Ritchie identifies no abuse of discretion in the district court's rulings.

The Receiver believes that oral argument is not necessary. The facts and legal arguments are adequately presented in the briefs and record, and the decisional process would not be significantly aided by oral argument.

i

# CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eighth Circuit Rule 26.1A, Appellee Douglas A. Kelley, solely in his capacity as receiver of the entities and individuals in the case captioned *United States v. Petters et al.*, No. 08-cv-5348 (ADM/TNL) (D. Minn.), states that the corporate parties in the Receivership are directly or indirectly owned by Thomas J. Petters, and not subsidiaries of any other corporation other than corporate entities that are or were in the Receivership or subsequently filed bankruptcy proceedings, and no publicly-held corporation owns 10% or more of their stock.

ii

# TABLE OF CONTENTS

**Page**

SUMMARY OF THE CASE ......................................................................i

CORPORATE DISCLOSURE STATEMENT ..................................... ii

COUNTERSTATEMENT OF JURISDICTION ...................................1

COUNTERSTATEMENT OF THE ISSUES.......................................1

COUNTERSTATEMENT OF THE CASE...........................................4

    A.    Prior Petters-Related Rulings by this Court ...........................4

    B.    The Peters Ponzi Scheme ......................................................5

    C.    Ritchie Invests $189 Million in the Ponzi Scheme ...............6

    D.    The Petters Receivership and Bankruptcy Cases ..................8

    E.    The Receivership Order ......................................................10

    F.    The Coordination Agreement ..............................................11

    G.    The Receiver's Litigation Against JPMorgan......................14

    H.    Ritchie's Unsuccessful Claims Against JPMorgan..............15

    I.    The Receiver and Trustees' Comprehensive Settlement with JPMorgan........................................................................18

    J.    Ritchie Intervenes in the Receivership For the Limited Purpose of Seeking Relief from the Litigation Stay .........................20

    K.    Ritchie Enters Into Settlement Agreement and Promises to Take No Further Action In Receivership ....................................22

    L.    Close of Receivership and Final Accounting......................24

SUMMARY OF THE ARGUMENT .................................................28

STANDARD OF REVIEW ...............................................................31

ARGUMENT ....................................................................................31

I.    THIS APPEAL SHOULD BE DIMMISSED AS MOOT ...............31

II.    THIS APPEAL IS FORECLOSED BY RITCHIE'S PROMISE TO APPELLEES AND THE DISTRICT COURT ...........................34

    A.    Ritchie Promised To Take No Further Action In The Receivership, Thereby Waiving Its Right To This Appeal.................34

Appellate Case: 21-2973    Page: 4    Date Filed: 01/25/2022 Entry ID: 5120636

B.    Ritchie Is Judicially Estopped From Disavowing Its Promise............36

III.   APPROVAL OF THE JPMORGAN SETTLEMENT SHOULD BE
       AFFIRMED ...................................................................................38

       A.    The District Court Did Not Deprive Ritchie of Due Process.............39

             1.    *Ritchie Has No Protected Interest Against JPMorgan.*............40

             2.    *The Bar Order Does Not Deprive Ritchie of a Protected
                   Interest.* ........................................................................42

             3.    *Ritchie Was Afforded Due Process.* ...........................................47

       B.    The District Court Had Subject Matter Jurisdiction. ..........................50

       C.    The Receiver Had Standing to Settle with JPMorgan......................51

IV.    THE FINAL ACCOUNTING SHOULD BE AFFIRMED ........................54

       A.    The District Court Was Within Its Discretion to Approve the
             Final Accounting. ...................................................................54

             1.    *The Receiver's Final Accounting Complied with the
                   District Court's Order.* ...........................................................55

             2.    *The Information Ritchie Seeks Was Previously Disclosed.* ......57

             3.    *Ritchie Seeks to Impose Requirements That Do Not Exist.* ......61

       B.    The District Court Was Within Its Discretion to Approve the
             Record Retention Procedures. ..........................................................63

CONCLUSION .........................................................................................66

iv

# TABLE OF AUTHORITIES

**Cases**                                                               **Page(s)**

*Anderson v. CNH U.S. Pension Plan*,
    515 F.3d 823 (8th Cir. 2008) ........................................................32, 33

*Brown v. Gillette Co.*,
    723 F.2d 192 (1st Cir. 1983)....................................................1, 34, 36

*Davis v. District of Columbia*,
    925 F.3d 1240 (D.C. Cir. 2019) ...........................................................37

*Dickie v. Flamme Bros.*,
    560 N.W.2d 762 (Neb. 1977) ...............................................................62

*Donell v. Kowell*,
    533 F.3d 762 (9th Cir. 2008) ...............................................................53

*Donner v. Alcoa, Inc.*,
    709 F.3d 694 (8th Cir. 2013) ...............................................................10

*Eberhard v. Marcu*,
    530 F.3d 122 (2d Cir. 2008) ..............................................2, 50, 51, 52

*Eichenholtz v. Brennan*,
    52 F.3d 478 (3d Cir. 1995) ..................................................................43

*Farley v. Benefit Tr. Life Ins. Co.*,
    979 F.2d 653 (8th Cir. 1992) ...............................................................34

*Gecker v. Gen. Elec. Cap. Corp.*,
    No. 14 C 8447, 2015 WL 5086398 (N.D. Ill. July 27, 2015)............................46

*Grede v. Bank of N.Y. Mellon*,
    598 F.3d 899 (7th Cir. 2010) ..........................................................2, 50

*Greenpond S., LLC v. Gen. Elec. Cap. Corp.*,
    886 N.W.2d 649 (Minn. Ct. App. 2016).......................................45, 46

*Hennepin Cty. v. M.W. Savage Factories*,
    83 F.2d 453 (8th Cir. 1936) .................................................................61

Appellate Case: 21-2973    Page: 6    Date Filed: 01/25/2022 Entry ID: 5120636

*Huston v. Mitchell*,
908 F.2d 275 (8th Cir. 1990) .......................................................1, 33

*Ilardo v. U.S. Postal Serv.*,
5 F.3d 1504 (Table), 1993 WL 302648 (Fed. Cir. 1993) ...................34

*In re IBP, Inc. Sec. Litig.*,
328 F. Supp. 2d 1056 (D.S.D. 2004) ................................................43

*In re Jiffy Lube Sec. Litig.*,
927 F.2d 155 (4th Cir. 1991) ............................................................43

*In re Lybarger*,
793 F.2d 136 (6th Cir. 1986) .................................................1, 34, 35

*In re Petters Co.*,
425 B.R. 534 (Bankr. D. Minn. 2010) .................................................9

*In re Petters Co.*,
494 B.R. 413 (Bankr. D. Minn. 2013) .................................................9

*In re Petters Co.*,
495 B.R. 887 (Bankr. D. Minn. 2013) .............................................6, 9

*In re Polaroid Corp.*,
472 B.R. 22 (Bankr. D. Minn. 2012) ........................................*passim*

*In re Sundance Corp., Inc.*,
149 B.R. 641 (Bankr. E.D. Wash. 1993) ...........................................62

*In re U.S. Oil & Gas Litig.*,
967 F.2d 489 (11th Cir. 1992) .......................................................2, 43

*In re Wilton Armetale, Inc.*,
968 F.3d 273 (3d Cir. 2020) .........................................................2, 50

*Jarvey v. Democratic Senatorial Campaign Comm., Inc.*,
712 F.3d 185 (5th Cir. 2013) ............................................................53

*Kelley v. Coll. of St. Benedict*,
901 F. Supp. 2d 1123 (D. Minn. 2012) .............................................53

vi

Appellate Case: 21-2973    Page: 7    Date Filed: 01/25/2022 Entry ID: 5120636

*Kelley v. JPMorgan Chase & Co.*,
   No. 10-cv-04999, 2018 WL 1720913 (D. Minn. Apr. 9, 2018) .......14, 16, 17, 41

*Kelley v. JPMorgan Chase & Co.*,
   No. 18-2063, 2018 WL 6016878 (8th Cir. June 4, 2018) ..................................17

*Marion v. TDI Inc.*,
   591 F.3d 137 (3d Cir. 2010) ................................................................53

*McFarland v. Winnebago S., Inc.*,
   119 F. App'x 834 (8th Cir. 2004) ........................................................33

*Mechanics' Tr. Co of Harrisburg v. Ensminger Lumber Co*,
   27 F.2d 877 (3d Cir. 1928) ............................................................61, 62

*Mitschele v. Meadown Brook Inv. Corp.*,
   197 A. 31 (N.J. Ch. 1938)..................................................................58

*Nebraska v. Cent. Interstate Low-Level Radioactive Waste Compact Comm'n*,
   187 F.3d 982 (8th Cir. 1999) ..............................................................34

*New Hampshire v. Maine*,
   532 U.S. 742 (2001)................................................................1, 36, 37

*Opportunity Fin., LLC v. Kelley*,
   822 F.3d 451 (8th Cir. 2016) ..............................................................4

*Patriot Cinemas, Inc. v. Gen. Cinemas Corp.*,
   834 F.2d 208 (1st Cir. 1987).............................................................38

*Phelan v. Middle States Oil Corp.*,
   154 F.2d 978 (2d Cir. 1946) .............................................................62

*POET Biorefining - Hudson, LLC v. U.S. Envtl. Prot. Agency*,
   971 F.3d 802 (8th Cir. 2020) .............................................................32

*Popp Telecom, Inc. v. Am. Sharecom, Inc.*,
   361 F.3d 482 (8th Cir. 2004) .............................................................45

*Post v. Harper*,
   980 F.2d 491 (8th Cir. 1992) .............................................................39

Appellate Case: 21-2973    Page: 8    Date Filed: 01/25/2022 Entry ID: 5120636

*Potter v. Norwest Mortg., Inc.*,
    329 F.3d 608 (8th Cir. 2003) ................................................................1, 31, 32

*PW Enters. v. N.D. Racing Comm'n*,
    540 F.3d 892 (8th Cir. 2008) ................................................................54

*Richards v. Aramark Services, Inc.*,
    108 F.3d 925 (8th Cir. 1997) ................................................................31

*Ritchie Capital Mgmt., LLC v. BMO Harris Bank, N.A.*,
    868 F.3d 661 (8th Cir. 2017) ................................................................4, 17

*Ritchie Capital Mgmt., LLC v. Costco Wholesale Corp.*,
    No. 14-cv-4819, 2015 WL 13019620 (S.D.N.Y. Sept. 21, 2015) ....................17

*Ritchie Capital Mgmt., LLC v. Costco Wholesale Corp.*,
    No. 17-cv-1664, 2017 WL 4990520 (D. Minn. Oct. 30, 2017)........................17

*Ritchie Capital Mgmt., LLC v. Fredrikson & Byron, P.A.*,
    No. 1-14-2067, 2015 WL 1445681 (Ill. App. March 27, 2015)........................17

*Ritchie Capital Mgmt., LLC v. Gen. Elec. Capital Corp.*,
    821 F.3d 349 (2d Cir. 2016) ................................................................17

*Ritchie Capital Mgmt., LLC v. Gen. Elec. Cap. Corp.*,
    121 F. Supp. 3d 321 (S.D.N.Y. 2015) ................................................................46

*Ritchie Capital Mgmt., LLC. v. Jeffries*,
    653 F.3d 755 (8th Cir. 2011) ................................................................4

*Ritchie Capital Mgmt., LLC v. Jeffries*,
    849 F. Supp. 2d 881 (D. Minn. 2012)................................................................4, 17

*Ritchie Capital Mgmt., LLC v. JP Morgan Chase & Co.*,
    960 F.3d 1037 (8th Cir. 2020) ................................................................4, 7, 15, 16

*Ritchie Capital Mgmt., LLC v. JPMorgan Chase & Co.*,
    No. 14-cv-4786, 2017 WL 6403096 (D. Minn. Dec. 17, 2017) .................15, 16

*Ritchie Capital Mgmt., LLC v. Kelley*,
    785 F.3d 273 (8th Cir. 2015) ................................................................4

Appellate Case: 21-2973    Page: 9    Date Filed: 01/25/2022 Entry ID: 5120636

*Ritchie Capital Mgmt., LLC v. McGladrey & Pullen, LLP*,
    155 N.E.3d 597 (Ill. App. 2020) ...........................................................................17

*Ritchie Capital Mgmt., LLC v. Opportunity Fin., LLC*,
    No. 27-CV-13-17424, 2015 WL 787747 (Minn. Dist. Ct. Jan. 15,
    2015) .................................................................................................................17

*Ritchie Capital Mgmt., LLC v. Stoebner*,
    779 F.3d 857 (8th Cir. 2015) ....................................................................4, 6, 7

*Ritchie Capital Mgmt., LLC v. U.S. Bank, N.A.*,
    No. 15-cv-2092, 2015 WL 4744528 (D. Minn. Aug. 11, 2015) .......................17

*Ritchie Special Credit Invs., Ltd. v. JPMorgan Chase & Co.*,
    2021 WL 2686079 (D. Minn. June 30, 2021) ...................................4, 16, 40, 46

*Ritchie Special Credit Invs., Ltd. v. U.S. Trustee*,
    620 F.3d 847 (8th Cir. 2010) .......................................................................4, 5, 9

*Roth v. G.D. Searle & Co.*,
    27 F.3d 1303 (8th Cir. 1994) ...........................................................................58

*Rotstain v. Mendez*,
    986 F.3d 931 (5th Cir. 2021) ...................................................................2, 3, 52

*Ruppert v. Principal Life Ins. Co.*,
    705 F.3d 839 (8th Cir. 2013) ........................................................................1, 32

*S.E.C. v. Ark. Loan & Thrift Corp.*,
    427 F.2d 1171 (8th Cir. 1970) ................................................................3, 31, 55

*S.E.C. v. DeYoung*,
    850 F.3d 1172 (10th Cir. 2017) .....................................................................47, 53

*S.E.C. v. Harris*,
    No. 3:09-CV-1809, 2015 WL 418107 (N.D. Tex. Feb. 2, 2015) .......................62

*S.E.C. v. Quan*,
    870 F.3d 754 (8th Cir. 2017) ........................................................................3, 31

*S.E.C. v. Quiros*,
    966 F.3d 1195 (11th Cir. 2020) ...................................................................2, 44

Appellate Case: 21-2973   Page: 10   Date Filed: 01/25/2022 Entry ID: 5120636

*S.E.C. v. Safety Fin. Serv., Inc.*,
  674 F.2d 368 (5th Cir. 1982) ...............................................................42

*Schauss v. Metals Depository Corp.*,
  757 F.2d 649 (5th Cir. 1985) ..............................................................43

*Scholes v. Lehmann*,
  56 F.3d 750 (7th Cir. 1995) ...............................................3, 50, 52, 53

*United States v. Hamed*,
  976 F.3d 825 (8th Cir. 2020) ...............................................1, 36, 37

*United States v. Petters*,
  663 F.3d 375 (8th Cir. 2011) ..................................................................5, 6

*United States v. Petters*,
  857 F. Supp. 2d 841 (D. Minn. 2012).................................................49

*United States v. Petters*,
  No. 08-cr-364, 2013 WL 269028 (D. Minn. Jan. 24, 2013).............49

*United States v. Reynolds*,
  643 F.3d 1130 (8th Cir. 2011) ...............................................................6

*United States v. Ritchie Special Credit Invs., Ltd.*,
  620 F.3d 824 (8th Cir. 2010) ..................................................*passim*

*Wilkinson v. Wash. Tr. Co. of N.Y.*,
  102 F. 28 (8th Cir. 1900) ..............................................................56, 61

*Zacarias v. Stanford Int'l Bank, Ltd.*,
  945 F.3d 883 (5th Cir. 2019) ......................................................*passim*

*Zayad v. Assoc. Bank, N.A.*,
  779 F.3d 727 (8th Cir. 2015) ...........................................................2, 52

**Statutes**

21 U.S.C. § 853 .......................................................................13, 49

21 U.S.C. § 981 ..............................................................................13

21 U.S.C. § 982 ..............................................................................13

Appellate Case: 21-2973    Page: 11    Date Filed: 01/25/2022 Entry ID: 5120636

28 U.S.C. § 589b(a)(1)................................................................63

18 U.S.C. § 1345..........................................................................8

**Other Authorities**

37 Am. Jur. 2d Fraudulent Conveyances and Transfers § 160.................................42

28 C.F.R. Part 9.........................................................................13

U.S. Const. art. III..............................................................1, 31, 32

U.S. Const. amend. XIV .................................................................2

Appellate Case: 21-2973     Page: 12     Date Filed: 01/25/2022 Entry ID: 5120636

## COUNTERSTATEMENT OF JURISDICTION

The Court lacks subject matter jurisdiction over this appeal because Ritchie settled all its interests in the Receivership. Ritchie ceases to have a personal stake in the outcome of the case, and there is no longer a live case or controversy under Article III of the Constitution. *See infra*, Argument § I.

## COUNTERSTATEMENT OF THE ISSUES

1.  Whether this appeal should be dismissed as moot by virtue of Ritchie's settlement agreement with the parties, which eliminates its personal stake in the outcome, such that there is no longer a case or controversy for the Court to decide. U.S. Const. art. III; *Ruppert v. Principal Life Ins. Co.*, 705 F.3d 839 (8th Cir. 2013); *Potter v. Norwest Mortg., Inc.*, 329 F.3d 608 (8th Cir. 2003); *Huston v. Mitchell*, 908 F.2d 275 (8th Cir. 1990).

2.  Whether Ritchie waived its right to appeal and/or is judicially estopped from pursuing it because Ritchie stipulated with the parties and represented to the district court that, in exchange for lifting the litigation stay, Ritchie would not execute against any Receivership assets or take any other action in the Receivership. *New Hampshire v. Maine*, 532 U.S. 742 (2001); *United States v. Hamed*, 976 F.3d 825 (8th Cir. 2020); *In re Lybarger*, 793 F.2d 136 (6th Cir. 1986); *Brown v. Gillette Co.*, 723 F.2d 192 (1st Cir. 1983).

1

3.      Whether the district court afforded Ritchie due process in entering the Bar Order, an essential element of the Receiver's settlement with JPMorgan, to preclude creditors from bringing claims that are duplicative or derivative of the settled claims when (1) Ritchie has no protected property interest against JPMorgan; (2) the Bar Order does not prevent Ritchie from pursuing direct claims against JPMorgan; (3) Ritchie was given notice and an opportunity to be heard; and (4) Ritchie could participate in the United States' remission process, which disposed of the settlement proceeds.  U.S. Const. amend. XIV; *United States v. Ritchie Special Credit Invs., Ltd.*, 620 F.3d 824 (8th Cir. 2010); *Zacarias v. Stanford Int'l Bank, Ltd*., 945 F.3d 883 (5th Cir. 2019); *In re U.S. Oil & Gas Litig.*, 967 F.2d 489 (11th Cir. 1992).

4.      Whether the district court had subject matter jurisdiction over the Receiver's motion to approve the JPMorgan settlement because the Receiver's authority to sue JPMorgan goes to the merits and is not a matter of constitutional standing.  *In re Wilton Armetale, Inc.*, 968 F.3d 273 (3d Cir. 2020); *Grede v. Bank of N.Y. Mellon*, 598 F.3d 899 (7th Cir. 2010); *Eberhard v. Marcu*, 530 F.3d 122 (2d Cir. 2008).

5.      Whether the Receiver had standing to pursue claims against JPMorgan on behalf of the entities in the Receivership that were the victims of Petters' fraud.  *Zayad v. Assoc. Bank, N.A.*, 779 F.3d 727 (8th Cir. 2015); *Rotstain*

2

*v. Mendez*, 986 F.3d 931 (5th Cir. 2021); *Zacarias v. Stanford Int'l Bank, Ltd.*, 945 F.3d 883 (5th Cir. 2019); *Scholes v. Lehmann*, 56 F.3d 750 (7th Cir. 1995).

  6. Whether the district court properly exercised its broad discretion to supervise and administer the receivership when it approved the Receiver's final accounting and record keeping procedures. *S.E.C. v. Quan*, 870 F.3d 754 (8th Cir. 2017); *S.E.C. v. Ark. Loan & Thrift Corp.*, 427 F.2d 1171 (8th Cir. 1970).

Appellate Case: 21-2973  Page: 15  Date Filed: 01/25/2022 Entry ID: 5120636

## COUNTERSTATEMENT OF THE CASE

### A.    Prior Petters-Related Rulings by this Court

This Court is familiar with the Petters Ponzi scheme, as it has ruled on at least eight related civil appeals, seven of which involved Ritchie as the appellant: *Ritchie Capital Mgmt., LLC v. JP Morgan Chase & Co.*, 960 F.3d 1037 (8th Cir. 2020) (affirmed in part and reversed in part dismissal of Ritchie's claims)[1]; *Ritchie Capital Mgmt., LLC v. BMO Harris Bank, N.A.*, 868 F.3d 661 (8th Cir. 2017) (affirmed abstention on Ritchie claims, vacated dismissal and remanded to stay proceedings); *Opportunity Fin., LLC v. Kelley*, 822 F.3d 451 (8th Cir. 2016) (lack of standing to appeal consolidation of bankruptcy estates); *Ritchie Capital Mgmt., LLC v. Kelley*, 785 F.3d 273 (8th Cir. 2015) (affirmed overruling of Ritchie's objection to settlement); *Ritchie Capital Mgmt., LLC v. Stoebner*, 779 F.3d 857 (8th Cir. 2015) (affirmed denial of Ritchie's appeal of bankruptcy court order avoiding Ritchie's interests as fraudulent transfers); *Ritchie Capital Mgmt., LLC. v. Jeffries*, 653 F.3d 755 (8th Cir. 2011) (reversed dismissal of Ritchie's claims against alleged Petters' conspirators)[2]; *Ritchie Special Credit Invs., Ltd. v. U.S.*

---

[1]  Ritchie's claims were dismissed on remand.  *See Ritchie Special Credit Invs., Ltd. v. JPMorgan Chase & Co.*, 2021 WL 2686079 (D. Minn. June 30, 2021). Ritchie has appealed.  *See* Appeal No. 21-2707.

[2]  On remand, Ritchie's claims were dismissed.  *Ritchie Capital Mgmt., LLC v. Jeffries*, 849 F. Supp. 2d 881 (D. Minn. 2012).

4

*Trustee*, 620 F.3d 847 (8th Cir. 2010) (*"In re Petters Co."*) (affirmed denial of Ritchie's request for expedited discovery and overruling Ritchie's objection to Kelley's appointment as Chapter 11 trustee); *United States v. Ritchie Special Credit Invs., Ltd.*, 620 F.3d 824 (8th Cir. 2010) (affirmed denial of Ritchie's motion to intervene in Receivership). Many of the facts relating to the Petters Ponzi scheme and to Ritchie are included in these decisions. The Receiver relies upon them in addition to providing a summary of the facts specific to this appeal.

### B. The Peters Ponzi Scheme

Thomas J. Petters ("Petters") was a prominent Minnesota businessman who owned numerous businesses, including Petters Group Worldwide LLC ("PGW"), Sun Country Airlines, Polaroid Corporation, Fingerhut, and Petters Company, Inc. ("PCI"). *United States v. Petters*, 663 F.3d 375, 379 (8th Cir. 2011). On September 8, 2008, one of Petters' employees "confessed to government authorities that she was assisting Petters in perpetrating a multi-billion dollar Ponzi scheme." *Id.* This Court has previously described Petters' "classic Ponzi scheme":

> Investors were told that their money would be used to purchase consumer electronics that would be sold to big box retailers at a substantial profit. Petters, along with his colleagues … used fabricated documents that purported to show the purchase of goods from vendors and the resale of the goods to retailers. Other fabricated documents showed Petters's company wiring funds to the vendors, giving the appearance that the company was investing its own funds. Early investors realized a return on their investment, but that return came from funds from new investors, funds from legitimate transactions, and, in some cases, funds from their own investments.

5

*United States v. Reynolds*, 643 F.3d 1130, 1132 (8th Cir. 2011).

Petters perpetuated this fraud "over an extended period of years, to churn increasingly-large volumes of money through business entities within this enterprise structure." *In re Polaroid Corp.*, 472 B.R. 22, 38 (Bankr. D. Minn. 2012) ("*Polaroid I*"), *aff'd sub nom Ritchie Capital Mgmt., LLC v. Stoebner*, 2014 WL 1386724 (D. Minn. Jan. 6, 2014), *aff'd* 779 F.3d 857 (8th Cir. 2015) ("*Polaroid II*"); *see Polaroid I*, 742 B.R. at 38 n.24 (noting the Ponzi scheme operated for 13 years). Petters' Ponzi scheme was "most centrally purveyed through PCI and a number of its many subsidiaries, but eventually involving more of his companies in the flow of money to keep it going." *Id.* at 36. PGW was also "implicated in the scheme as an alleged recipient and conduit of a significant portion of the funding that had been received by PCI or its subsidiary entities." *Id.* at 28.

This Court affirmed Petters' conviction and prison sentence of 50 years. *United States v. Petters*, 663 F.3d at 378. The losses from the Ponzi scheme exceeded $3.5 billion. *In re Petters Co.*, 495 B.R. 887, 892 (Bankr. D. Minn. 2013).

### C. Ritchie Invests $189 Million in the Ponzi Scheme

Between February 1, 2008 and February 19, 2008, Rhone Holdings II, Ltd., Ritchie Special Credit Investments Ltd., as well as certain affiliates, subsidiaries,

or agents of Ritchie Capital Management, LLC (collectively, "Ritchie" or "Appellants"), invested in Petters' Ponzi Scheme by lending $146 million to PCI (though they papered the transactions as loans to Petters and PGW), on an unsecured basis, carrying a staggering 80% annualized interest rate. *Polaroid I*, 472 B.R. at 47-49. By May 9, 2008, although there had been no payment on its original investments, Ritchie lent another $43 million with "shock[ing]" annualized interest rates ranging between 67% and 362.1%, for a total investment of approximately $189 million. *Ritchie v. JPMorgan*, 960 F.3d at 1044; *Polaroid I*, 472 B.R. at 47-49. In September 2008, with the Ritchie loans still unpaid and overdue, and Petters' financial collapse looming, Ritchie persuaded Petters to grant Ritchie liens on certain intellectual property rights of Polaroid. *Polaroid I*, 472 B.R. at 50-52.

Ritchie's Polaroid liens were later nullified as fraudulent transfers after several years of extensive litigation by the Polaroid Trustee seeking to avoid the Ritchie security interest so that recoveries in the estate could go to its rightful creditors and not Ritchie, who simply tried an unsuccessful collateral grab. *Polaroid II*, 779 F.3d at 863. As this Court found, "[p]erhaps the most salient fact" establishing the fraudulent nature of the transfer is that "Polaroid received no value [from Ritchie] in exchange." *Id.* ("Polaroid was not a party to the Ritchie loans and received no money from the loans…."); *see also Polaroid I*, 472 B.R. at 26

7

("The Polaroid Corporation received none of the funds advanced by the Ritchie Defendants, at any time.").

### D. The Petters Receivership and Bankruptcy Cases

On October 2, 2008, the United States sought an asset freeze and receivership under the Anti-Fraud Injunction Act, 18 U.S.C. § 1345, in the United States District Court for the District of Minnesota for the benefit of victims of Petters' massive fraud (the "Receivership"). A.2-3, R.Doc.12 at 2-3.[3] On October 6, 2008, the district court issued an Order for Entry of Preliminary Injunction, Order Appointing Receiver and Other Equitable Relief that appointed Douglas A. Kelley (the "Receiver" or "Kelley") as Receiver for, among others, Petters, PCI, and PGW. A.1-15, R.Doc.12.

This was the genesis of Ritchie's antagonism toward the Receiver and the various Minnesota district court proceedings. Despite there being no business operations in Illinois, Ritchie sought to establish a receivership over PCI and PGW in Cook County, Illinois and sought to appoint William "Billy" Procida as the receiver. *United States v. Ritchie*, 620 F.3d at 829. On October 7, 2008, Ritchie

---

[3] Citation to: (1) "R.Doc." refers to documents from the district court docket in the Receivership; (2) documents filed in related cases are referred to as "[case number].R.Doc."; (3) "ADD." refers to Appellants' Addendum; (4) "A." refers to Appellants' Appendix; (5) "SADD." refers to the separate Addendum filed by Appellees; (6) "SA." refers to the separate Appendix filed by Appellees; and (7) "Br." refers to Appellants' opening brief in this appeal.

sought to intervene in the Receivership, asking the district court to defer to the Illinois court. *Id.* The district court denied Ritchie's motion so the instant Receivership could proceed in Minnesota. *Id.* Days later, the Illinois court ruled its orders had expired and were of no effect. *Id.* Ritchie has inexplicably always believed it is special as compared to the other similarly-situated lenders to Petters, PCI, and PGW, who collectively had contractual obligations owing in excess $3.65 billion when the Petters empire collapsed. *In re Petters Co.*, 495 B.R. at 892.

Between October 11 and October 19, 2008, the Receiver filed petitions commencing the Chapter 11 bankruptcy cases of PCI, PGW, and eight special purpose entities ("SPEs") used to facilitate the scheme. *In re Petters Co.,* 494 B.R. 413, 417 (Bankr. D. Minn. 2013). On December 24, 2008, the United States Trustee's Office appointed Kelley as the Chapter 11 Trustee (the "Trustee") of these bankruptcy estates. *Id.* On February 26, 2009, the bankruptcy court approved the Trustee's appointment, which was ultimately confirmed by this Court over Ritchie's objection. *In re Petters Co.*, 620 F.3d at 850. Subsequently, Ritchie requested an election of a new Chapter 11 trustee in an attempt to remove Kelley. *In re Petters Co.*, 425 B.R. 534, 538 (Bankr. D. Minn. 2010). While Ritchie attempted to force an election, it was unable to establish a quorum, once again failing to oust an independent trustee not of its choosing. *Id.*

9

Ritchie negotiated an allowed unsecured claim in the PCI/PGW bankruptcy, in the amount of $163,182,684.19. SA.118, Bankr.08-45257.R.Doc.3284 at 4.[4] As an unsecured creditor, to date Ritchie has received 17% of its allowed claim. SA.191, Bankr.08-45257.R.Doc.4232 at 3. While Ritchie had claims against Petters individually, it had no claims against any of the entities in the Receivership once PCI and PGW were placed into bankruptcy, because Ritchie's transactions did not involve any other Receivership entity.

### E. The Receivership Order

The district court entered its Second Amended Order for Entry of Preliminary Injunction, Appointment of Receiver, and Other Equitable Relief on December 8, 2008 ("Receivership Order"). A.53-73, R.Doc.127. Among other duties, the Receivership Order provides that "[t]he receiver shall have full power to ... sue for, collect, receive, take in possession, hold, liquidate or sell and manage all assets of Defendants and other persons or entities whose interests are now held by or under the direction, possession, custody, or control of Defendants." A.65-66, R.Doc.127 at 13-14. The Receivership Order defines the "Defendants" included in

---

[4] The Court may take judicial notice of matters filed in related cases. *See Donner v. Alcoa, Inc.*, 709 F.3d 694, 698 n.2 (8th Cir. 2013) ("[F]ederal courts may sua sponte take judicial notice of proceedings in other courts if they relate directly to the matters at issue." (quoting *United States v. Evans*, 690 F.3d 940, 943 (8th Cir. 2012)).

10

the Receivership to include, among others, Thomas Petters, PCI and PGW, and "any affiliates, subsidiaries, divisions, successors, or assigns owned 100% or controlled by the foregoing." A.56-57, R.Doc.127 at 4-5.

The Receivership Order also imposed a stay against "[c]ommencing, prosecuting, or continuing a judicial, administrative, or other action or proceeding against Defendants, including the issuance or employment of process against Defendants, except that such actions may be commenced if necessary to toll any applicable statute of limitations" (the "Litigation Stay"). A.71, R.Doc.127 at 19.

### F. The Coordination Agreement

On September 14, 2010, the district court and the bankruptcy court sat in joint session and entered orders approving a Coordination Agreement between the Receiver, the Trustee, John R. Stoebner as Chapter 7 trustee of the jointly-administered bankruptcy estates of *In re Polaroid Corp., et al.*, No. 08-46617 (Bankr. D. Minn.) (the "Polaroid Trustee"), and the United States. SA.34-37, R.Doc.1466. The Coordination Agreement recognized that there was "significant overlap of identity between victims of the fraud and creditors of the PCI Estates and the PGW Estate, and competing litigation would result in the overall diminishment of the recovery for victims and creditors." SADD.10, R.Doc.1351-1 at 4.

Appellate Case: 21-2973    Page: 23    Date Filed: 01/25/2022 Entry ID: 5120636

The Coordination Agreement allocated ownership of the respective claims of the Receivership and the bankruptcy estates among the Trustee, the Polaroid Trustee, the United States, and the Receiver. SADD.9-10, R.Doc.1351-1 at 3-4. The heavy lifting would be done in the bankruptcy proceedings and the Receiver would "use his best efforts to minimize fees and costs incurred by the receivership estate subject to the performance of his duties and the discharge of his responsibilities pursuant to court order, and to use his best efforts to utilize the United States Bankruptcy Court and his position as Trustee to maximize recovery to creditors." SADD.13, R.Doc.1351-1 §I.C.

The Coordination Agreement also addressed the use of recovered funds between the Receiver, the Trustees, and the United States. SADD.11-13, R.Doc.1351-1 at 5-7. Recoveries from litigation or settlements based on parallel claims pursued by Kelley as both the Receiver and Trustee, would go to the bankruptcy estates. SADD.15, R.Doc.1351-1 §III.B.2. However, if the recovery was based solely on claims made by the Receiver, then the proceeds would "be turned over to the United States for the benefit of victims through remission of assets." *Id.* Similarly, the parties agreed that the United States would forfeit Petters' individual assets and "seek to liquidate those assets for the benefit of the victims through remission of assets." SADD.11, R.Doc.1351-1 §I.B.1.

12

In exchange, the United States agreed, *inter alia,* that it would not exercise its statutory forfeiture rights against certain bankruptcy entities and subsidiaries,[5] absent agreement of the Receiver and Trustees. SADD.14, R.Doc.1351-1 §II.C. This prevented the forfeiture of assets and clawback recoveries of the Trustee's bankruptcy estates and the Polaroid Trustee's bankruptcy estate. *Id.*

Based on Petters' conviction, the United States held the authority to immediately seize and forfeit all proceeds of the Petters Ponzi Scheme, including the assets held by third parties. 21 U.S.C. §§ 981 & 982; SADD.9, R.Doc.1351-1 at 3. Petters was ordered to pay a forfeiture money judgment of over $3.5 billion. *See* SA.3, 10, 08-cr-364.R.Doc.395 ¶3 & R.Doc.400 at 6. Thus, the United States administered a forfeiture remission process, 21 U.S.C. § 853(j) and 28 C.F.R. Part 9, with the goal of returning government forfeited funds to victims of Petters' fraud. SA.184, R.Doc.3215 at 4; SADD.13, R.Doc.1351-1 §I.B.4.

Absent entry into the Coordination Agreement, the United States likely would have sought to forfeit all proceeds of the criminal acts conducted as part of Petters' Ponzi scheme, including those received in the bankruptcy estates. The Coordination Agreement represented a carefully crafted and court-approved

---

[5] The court in Petters' criminal case declined to order restitution, noting that the Government could "proceed through the [forfeiture] remission process, as authorized in 21 U.S.C. § 853(j) and 28 C.F.R. Part 9." SA.21, 08-cr-364.R.Doc.459 at 11.

13

approach to maintaining an orderly and coordinated recovery and distribution process premised on mutual cooperation among the Receiver, Trustee, the Polaroid Trustee, and the United States. *See, e.g.*, SADD.15, R.Doc.1351-1 §III.B.2.

### G.     The Receiver's Litigation Against JPMorgan

Thomas Petters maintained investment accounts at JPMorgan Chase Bank ("JPMorgan"). Petters pledged his personal investment accounts as collateral for a credit line of PGW. When federal agents raided Petters' offices on September 24, 2008, the balance of Petters' investment accounts at JPMorgan exceeded $25 million. *Kelley v. JPMorgan Chase & Co.*, No. 10-cv-04999, 2018 WL 1720913, at *3-7 (D. Minn. Apr. 9, 2018). After JPMorgan learned of the raid, on or around September 30, 2008, JPMorgan declared PGW's credit line in default, and then seized and began to liquidate the assets held in Petters' investment accounts. *Id.* at *3.

In December 2010, the Receiver commenced litigation to recover the funds taken from Petters' investment account by JPMorgan, as well as other amounts related to Petters' acquisition of Polaroid, for the benefit of victims of Petters' fraud. *Id.* The Receiver alleged that JPMorgan "stepped ahead of the Ponzi scheme's victims and creditors to recover the nearly $20 million that PGW owed under the credit line." *Id.* This litigation was commenced by the Receiver on behalf of Petters and all the other entities in the Receivership, including those who

14

are creditors or claimants of Petters. A.86, 89; 10-cv-4999.R.Doc.1 ¶¶1, 14. The complaint asserted that transfers and payments related to the Polaroid acquisition and funds taken from Petters' personal investment accounts were fraudulent transfers and/or avoidable transactions. A.90-95; 10-cv-4999.R.Doc.1 at 6-11.

In addition to the Receiver's lawsuit, the Trustee, Polaroid Trustee, and Trustee of *In re Petters Capital LLC*, No. 09-43847 (Bankr. D. Minn.), (collectively, "Trustees") each commenced adversary proceedings against JPMorgan recover certain transfers made by their debtors as fraudulent transfers and under other theories. *See Kelley v. JPMorgan Chase & Co.*, Nos. 10-4443, 10-4444, 10-4445 (Bankr. D. Minn.) ("Adversary Proceedings"); *see also Ritchie Capital Mgmt., LLC v. JPMorgan Chase & Co.*, No. 14-cv-4786, 2017 WL 6403096, at \*3 (D. Minn. Dec. 17, 2017), *aff'd in part, rev'd in part in* 960 F.3d 1037 (8th Cir. 2020). The Receiver's action against JPMorgan was stayed by agreement of the parties pending resolution of the Adversary Proceedings. A.130; 10-cv-4999.R.Doc.14.

## H. Ritchie's Unsuccessful Claims Against JPMorgan

Ritchie also filed its own lawsuit against JPMorgan, seeking for itself recovery of the same funds that the Receiver and Trustees were pursuing on behalf of all victims and creditors. *Ritchie v. JPMorgan*, 2017 WL 6403096. Judge Donovan Frank dismissed with prejudice Ritchie's complaint against JPMorgan as

15

time-barred, *id.* at *8-9, and this Court affirmed in part and reversed in part, *Ritchie v. JPMorgan*, 960 F.3d at 1055. On remand, Judge Frank again dismissed Ritchie's claims against JPMorgan with prejudice on several bases, including: (1) Ritchie lacked standing to bring its claims against JPMorgan because its claims belonged to the Petters bankruptcy and Receivership estates; (2) several of Ritchie's claims were time-barred; (3) and each of Ritchie's causes of action failed to state a claim. *Ritchie Capital Mgmt., LLC v. JPMorgan Chase & Co.*, No. 14-cv-4786, 2021 WL 2686079 (D. Minn. June 30, 2021). Judge Frank's decision is yet another loss that Ritchie is appealing to this Court. Appeal No. 21-2707.

As an end run around the dismissal of Ritchie's claims against JPMorgan, Ritchie also brought a motion to intervene in the Receiver's litigation against JPMorgan. *Kelley v. JPMorgan*, 2018 WL 1720913, at *5. Judge Susan Richard Nelson affirmed the magistrate judge's order denying Ritchie's motion to intervene in the JPMorgan litigation as untimely and prejudicial to the existing parties. *Id.* at *6-8. Judge Nelson "decline(d) Ritchie's invitation to put the proverbial blinders on and view the Receiver's case against JPMC in isolation." *Id.* at *6. The court found that "the parties clearly would be prejudiced were Ritchie's untimely intervention be permitted, as they would have to, at best, modify their settlement agreement, and, at worst, begin from scratch to accommodate Ritchie, who,

16

significantly, has been deemed … to have no cognizable claims against JPMC." *Id.* at *8.[6]

This course of conduct and subsequent outcome is not out of the ordinary for Ritchie. Ritchie has filed at least eight other lawsuits seeking to circumvent the Receivership and bankruptcy processes to recover for its losses on its investments in the Petters Ponzi scheme ahead of other similarly-situated creditors. Many of these lawsuits are predicated on fraudulent transfer theories or implicate parties that have been subject to suit by the Receiver and the Trustees. These suits by Ritchie have been dismissed or stayed.[7]

---

[6] Ritchie voluntarily dismissed its appeal from Judge Nelson's order. *See Kelley v. JPMorgan Chase & Co.*, No. 18-2063, 2018 WL 6016878 (8th Cir. June 4, 2018).

[7] *See BMO Harris Bank, N.A.*, 868 F.3d 661 (affirming abstention, but holding case should have been stayed rather than dismissed); *Ritchie Capital Mgmt., LLC v. Gen. Elec. Capital Corp.*, 821 F.3d 349 (2d Cir. 2016) (affirming dismissal); *Ritchie Capital Mgmt., LLC v. Costco Wholesale Corp.*, No. 17-cv-1664, 2017 WL 4990520 (D. Minn. Oct. 30, 2017) (dismissing complaint); *Ritchie Capital Mgmt., LLC v. Costco Wholesale Corp.*, No. 14-cv-4819, 2015 WL 13019620 (S.D.N.Y. Sept. 21, 2015) (same); *Ritchie Capital Mgmt., LLC v. U.S. Bank, N.A.*, No. 15-cv-2092, 2015 WL 4744528 (D. Minn. Aug. 11, 2015) (same); *Ritchie Capital Mgmt., LLC v. Jeffries*, 849 F. Supp. 2d 881 (D. Minn. 2012) (same); *Ritchie Capital Mgmt., LLC v. McGladrey & Pullen, LLP*, 155 N.E.3d 597 (Ill. App. 2020) (affirming dismissal); *Ritchie Capital Mgmt., LLC v. Fredrikson & Byron, P.A.*, No. 1-14-2067, 2015 WL 1445681 (Ill. App. March 27, 2015) (same); *Ritchie Capital Mgmt., LLC v. Opportunity Fin., LLC*, No. 27-CV-13-17424, 2015 WL 787747 (Minn. Dist. Ct. Jan. 15, 2015) (staying action).

Appellate Case: 21-2973   Page: 29   Date Filed: 01/25/2022 Entry ID: 5120636

## I. The Receiver and Trustees' Comprehensive Settlement with JPMorgan

The Trustees and the Receiver entered into a global mediated settlement with JPMorgan in April 2018 ("JPMorgan Settlement"). A.226, R.Doc.2980-1 at 1. Consistent with the Coordination Agreement, particularly section I(C), the parties cooperated to resolve their competing claims involving common assets against JPMorgan, with the purpose to maximize recoveries for their respective estates, victims, and creditors. The settlements minimized the cost that would have been incurred if the Receiver and the Trustees separately litigated their respective interests in such assets and causes of action. Cooperation and coordination maximized the recovery of assets distribution to creditors and victims while minimizing the risks, costs, and expenses of the parties. A.209, R.Doc.2979 at 6.

Following extensive mediation, the parties agreed that JPMorgan would pay $2.5 million in settlement of the Receiver's claims and $30,725,000 in settlement of the Trustees' claims. A.212, R.Doc.2979 at 9. The JPMorgan Settlement required that the district court in the Receivership and bankruptcy court overseeing the Adversary Proceedings approve the agreement and each issue a bar order precluding Ritchie and other creditors from pursuing certain claims against JPMorgan, to the extent such claims belong to the Trustees or the Receiver, or are derivative of such claims ("Bar Order"). A.230-31, R.Doc.2981-1 at 5-6. The Bar Order was an essential and necessary part of the JPMorgan Settlement because it

18

gave the JPMorgan defendants the assurance that they would not be subject to future suits alleging any of the claims being settled. A.214, R.Doc.2979 at 11. Failure to obtain the Bar Order would have rendered the JPMorgan Settlement null and void. A.214-17, R.Doc.2979 at 11-14.

In addition, the Receiver obtained a release from the United States Attorney's Office for the District of Minnesota for the benefit of the JPMorgan defendants. A.246-49, R.Doc.2980-1 at 21-24. That release "was a material inducement for the [JPMorgan] Defendants to enter into the settlement agreement." A.213, R.Doc.2979 at 10.

Ritchie was the sole objector to the JPMorgan Settlement in the Receivership and Adversary Proceedings. A.444, R.Doc.2990 at 2; SA.120-34, Bankr.08-45257.R.Doc.4012. Ritchie objected, *inter alia*, that the settlement was prejudicial to its rights to pursue its claims. A.298-302, R.Doc.2984 at 20-24. Following a hearing, the district court overruled Ritchie's objections and approved the settlement, finding:

> [T]he $2,500,000 payment … provides a concrete, immediate, and substantial benefit to the Receivership. Additionally, the settlement avoids the uncertainty and additional expenses associated with further litigating this complex and strongly contested case. The Court further finds that the Bar Order is not overly broad because it is limited to claims that belong or belonged to the Receiver or are derivative of such claims. The Bar Order does not bar direct claims that Ritchie might have against JPMC.

A.444-45, R.Doc.2990 at 2-3.

Similarly, the bankruptcy court overruled Ritchie's objections and approved the Trustees' settlement agreement in the Adversary Proceedings. *See* SA.135-41, Bankr.08-45257.R.Doc.4019. The approving courts entered Bar Orders permanently enjoining Petters' creditors from asserting any claims against JPMorgan that "belong[] or belonged to the Receiver [or Trustees], whether or not already asserted by the Receiver [or Trustees], or [are] derivative of such a Claim." A.446-47, R.Doc.2990 at 4-5; *see* SA.140-41, Bankr.08-45257.R.Doc.4019 at 6-7.

Consistent with the terms of the Coordination Agreement, representations at the settlement hearing, and terms of the JPMorgan Settlement, in November 2018, the Receiver filed a status report stating that the JPMorgan Settlement "was forfeited and the full settlement payment of $2,500,000.00 was remitted to the United States Marshal's Service." A.450, R.Doc.3058 at 2. At that time, Ritchie did not file an objection to this disposition of the settlement payment. ADD.10, R.Doc.3274 at 5.

## J. Ritchie Intervenes in the Receivership For the Limited Purpose of Seeking Relief from the Litigation Stay

As part of its relentless quest to recover its own losses ahead of others, Ritchie made multiple attempts to lift the Litigation Stay imposed by the Receivership court. On September 14, 2015, the district court granted Ritchie's unopposed motion to intervene in the Receivership "for the limited purpose of seeking relief from the [L]itigation [S]tay." SA.106, R.Doc.2784 at 10. Ritchie

20

moved to lift the Litigation Stay to obtain a default judgment against Petters in state court. SA.104-05, R.Doc.2784 at 8-9. Ritchie avowed that it would not execute against assets of the Receivership, but would instead use the judgment in Ritchie's actions against third parties such as JPMorgan. *Id.* The court denied Ritchie's motion to lift the Litigation Stay, finding *inter alia* that "the Ritchie Parties are seeking to recover for themselves funds from [JPMorgan] which are the same funds the Receiver is seeking to recover for the benefit of all victims." SA.109, R.Doc.2784 at 13.

Two years later, Ritchie again moved to lift the Litigation Stay and went a step further to ask the district court to terminate the Receivership. A.167, R.Doc.2915 at 2. Again, Ritchie sought a judgment against Petters to use against JPMorgan. A.176, R.Doc.2915 at 11. The district court once more denied Ritchie's motion, holding that "Ritchie's efforts to recover the same funds for itself that the Receiver is attempting to recover for all victims and creditors exemplifies why the Receivership remains necessary." A.175, R.Doc.2915 at 10.

Ritchie appealed (Appeal No. 17-3379). A.287, R.Doc.2984 at 9. Certain issues in Ritchie's prior appeal were identical to issues in the instant appeal, including: (1) seeking a list of the corporate entities in the Receivership, (2) questioning the Receiver's standing to sue, and (3) challenging the district court's "refusal to allow for a claim process." A.288-89, R.Doc.2984 at 10-11. While

Ritchie's appeal was pending, the Receiver and Trustees reached the settlement with JPMorgan discussed above.  A.226, R.Doc.2980-1.

### K. Ritchie Enters Into Settlement Agreement and Promises to Take No Further Action In Receivership

Following the district court's order approving the JPMorgan Settlement, and just two weeks before oral argument in Ritchie's appeal, Ritchie entered into a settlement stipulation with the Receiver and the United States on April 26, 2019. SADD.1-6, R.Doc.3083.   In exchange for the United States' and Receiver's agreement not to oppose Ritchie's motion to lift the Litigation Stay to allow Ritchie to pursue its litigation against Petters, Ritchie agreed to dismiss its appeal and promised to take no further action in the Receivership.  Specifically, Ritchie released its rights as to the Receivership as follows:

> The Ritchie Entities agree that they will not utilize any personal judgment against Petters obtained in any continued action by the Ritchie Entities against Petters, or any other means, to execute against (i) the Petters Receivership assets that currently exist as set forth in Status No. 64 …; or (ii) the assets of Petters that have been forfeited by the government as of the date of this Stipulation as enumerated in numerous Forfeiture Orders prior to the date of this Stipulation; as well as any additional assets of Petters that may be forfeited to the government between the date of this Stipulation and the date the Petters Receivership is formally dissolved. ***The Ritchie Entities also agree not to file any additional motions against the Petters Receivership, or make any additional requests, or otherwise take any other action in the Petters Receivership*** unless it is necessary to clarify or interpret the scope and terms of this Stipulation.

SADD.5, R.Doc.3083 at 6 (emphasis added). The district court granted the parties'
motion to approve the settlement stipulation and entered an order including its
terms. SADD.7-8, R.Doc.3103 at 1-2. *See also* Docket entry for R.Doc.3080
(referring to the parties' motion as a "Motion for Approval of Settlement").

Ritchie then dismissed its appeal and moved to lift the Litigation Stay in the
district court, again representing that "[t]he Ritchie entities have stipulated that
they will not enforce the judgment against Thomas J. Petters or seek to obtain any
assets of ... or otherwise interfere with the Receivership." SA.164, R.Doc.3113 at
3. In exchange for Ritchie's dismissal of the appeal and representations in the
stipulated settlement, the United States and Receiver did not oppose Ritchie's
motion to lift the stay. A.454, R.Doc.3120 at 2. In light of Ritchie's
representations and the parties' agreement, the district court granted Ritchie's
motion to lift the stay to "immediately allow the Ritchie Entities to continue any
action against Thomas J. Petters." A.454-55, R.Doc.3120 at 2-3. As a result of the
stay being lifted, on March 10, 2020, Ritchie obtained judgments against Petters in
Minnesota state court totaling over $47 million, A.543, R.Doc.3240 at 10, after
first obtaining a judgment in the circuit court of Cook County, Illinois on
December 23, 2019, in the total amount of $540,289,261.97.[8] Br.7.

---

[8] This was several times the $189 million initially invested by Ritchie due to the
67, 80, and 362.1 percent accruing interest. *See Polaroid I*, 472 B.R. at 47-49.

## L.      Close of Receivership and Final Accounting

Once the "work of the Petters receivership [was] complete," after over twelve years of proceedings, the United States moved to dissolve the preliminary injunction and terminate the Receivership in December 2020, subject to a final accounting to be prepared by the Receiver.  SA.187, R.Doc.3215 at 7.  Ritchie filed a response stating that it did not oppose the Government's motion, but requested a formal procedure to allow third parties access to the documents and information possessed by the Receiver.  A.506, R.Doc.3223 at 2.  Ritchie cited its pending litigation against JPMorgan as the basis for its request.  *Id.*

The district court granted the United States' motion, ordered the Receiver to file the accounting within 45 days, and stated that procedures for retaining and accessing receivership documents would be addressed in that 45-day period. A.507-08, R.Doc.3223 at 3-4.  The court retained jurisdiction to resolve these outstanding issues, but cautioned that "the receivership shall not be used as a vehicle for discovery in the Ritchie Entities' lawsuit against [JPMorgan], and all documents governed by a confidentiality agreement will remain confidential." A.507, R.Doc.3223 at 3.  The court directed that the Receiver's accounting "shall include a description of the value of all assets taken into the receivership and all expenses associated with the receivership."  A.508, R.Doc.3223 at 4.

In compliance with the court's order, the Receiver filed two reports—one for the assets of Petters individually, A.509, R.Doc.3234, and one for the Receivership as a whole, with separate schedules reflecting the total recoveries and distributions from all the receivership entities and bankruptcy estates, including the bankruptcy estates of the PCI and SPE hedge fund lenders, A.529, R.Doc.3235-1. The final accounting reports detailed the steps taken by the Receiver, the Receivership's source and amounts of recoveries, all assets taken into the Receivership, all expenses paid by the Receiver and their purpose, and the Receivership distributions. A.509-533, R.Docs.3234, 3235, 3235-1.

The Receiver also went to great lengths to accommodate Ritchie. A.1102, R.Doc.3261 at 2. Ritchie submitted a six-page letter requesting information. *Id.* Following several rounds of communications, the Receiver voluntarily made a significant document production to Ritchie, and declined only the requests relating to documents belonging to the bankruptcy estates or related to the JPMorgan litigation, which the court had admonished Ritchie from pursuing. *Id.*; A.507, R.Doc.3223 at 3. The charges assessed to Ritchie only related to the incremental costs for responding to the requests. A.1103, R.Doc.3261 at 3. Following objections from Ritchie and BMO Harris Bank, the Receiver agreed to delay the destruction of Receivership property. ADD.8, R.Doc.3274 at 3.

Appellate Case: 21-2973   Page: 37   Date Filed: 01/25/2022 Entry ID: 5120636

Ritchie, in usual fashion, objected to the Receiver's final accounting. ADD.8-11, R.Doc.3274 at 3-6. Following written submissions and a public hearing, the district court overruled Ritchie's objections and, *inter alia*, (1) approved the final accounting, (2) established procedures for record retention and destruction, and (3) closed the Receivership and discharged the Receiver. ADD.8-11, R.Doc.3274 at 3-6. The district court found that "[t]he final accountings include sufficiently detailed summaries of Receivership recoveries, expenses, and distributions" and that "most of the information Ritchie seeks has been included in previously filed motions and fee applications." ADD.10, R.Doc.3274 at 5. The court explained the steps used to ensure the transparency of the Receivership process: "a motion and public hearing were held for every sale or liquidation of a Receivership asset and every fee application. … [T]his Court freely granted parties to intervene temporarily to argue their point at these motions and people were heard. Now, after more than 120 public hearings and nearly 3,300 docket entries, the work of the Receiver has concluded." ADD.12, R.Doc.3274 at 7 (citations and quotation omitted).

The court approved the Receiver's proposal to retain Receivership records and property until related pending litigation by Ritchie and other third parties has been resolved, and ordered that parties requesting the turnover or further retention of property make advanced payment for "all fees and costs related to such request

26

and ongoing retention." ADD.13, R.Doc.3274 at 8. The court reasoned that the "entire library of Receivership records cannot be made available to the public or to requesting parties because some of the records have been obtain pursuant to confidentiality agreements and protective orders" and "it is reasonable to require a requesting party to pay for the costs incurred in the production." ADD.10, R.Doc.3274 at 5.

The court noted the magnitude of the Receiver's undertaking and accomplishments: "The entry of this Order makes the end of an equity receivership that was prompted by one of the largest and most complex Ponzi schemes in U.S. history." ADD.11, R.Doc.3274 at 6. In furtherance of the Receivership's "primary objective" to "preserve assets for victims and creditors," the court found that the Receiver had "placed Petters' major corporations into bankruptcy [and filed] hundreds of clawback actions … against transferees of property belonging to the Receivership and bankruptcy estates." ADD.11-12, R.Doc.3274 at 6-7. The Government, in turn, "forfeited Receivership property for distribution to victims through the remission process." ADD.12, R.Doc.3274 at 7. "These efforts have resulted in global distributions to victims and creditors of over $722 million," representing more than a 30 percent net recovery, a "recovery rate far exceed[ing] the expectations that existed at the beginning of this case, and places it among the very top outcomes achieved in large fraud cases." *Id.*

Appellate Case: 21-2973   Page: 39   Date Filed: 01/25/2022 Entry ID: 5120636

In overruling Ritchie's objections, the district court noted "Ritchie has previously stipulated in this case that it will not use any judgments it obtains against Thomas J. Petters to execute against Receivership assets or otherwise interfere with the Receivership." ADD.11, R.Doc.3274 at 6. Despite its promise to take no further action in the Petters Receivership, Ritchie appeals two of the district court's orders.

## SUMMARY OF THE ARGUMENT

**I.** This appeal should be dismissed as moot because Ritchie settled its interests in the Receivership in exchange for obtaining a lift of the Litigation Stay to allow it to secure a judgment against Petters in state court. As part of the settlement, Ritchie promised not only that it would not use the judgment against Receivership assets, but also that it would not "file any additional motions, … make any additional requests, or otherwise take any other action in the Petters Receivership." Ritchie no longer has a personal stake in the Receivership, which means there is no longer an active case or controversy for the Court to adjudicate, thus depriving the Court of subject matter jurisdiction.

**II.** Alternatively, this appeal should be dismissed because Ritchie waived its right to appeal and is judicially estopped from disavowing its promise to the district court that it would take no further action in the Receivership. Ritchie stipulated with Appellees and assured the district court that it would effectively

28

cease its involvement in the Receivership if the Litigation Stay were lifted. Because Ritchie voluntarily relinquished its right to make additional requests or take "any other action" in the Receivership in exchange for lifting the stay, it has waived its right to file this appeal. Moreover, Ritchie's position that it is entitled to appeal is inconsistent with its prior representation to the district court that it would take no further action in the Receivership. Ritchie should be judicially estopped from contradicting these representations.

**III.** The district court was within its discretion to approve the Receiver's settlement with JPMorgan and enter the corresponding Bar Order to prevent other parties from asserting claims against JPMorgan that belonged to the Receiver or were derivative of such claims.

*First*, Ritchie was not deprived of due process by virtue of the Bar Order for several reasons: (1) Ritchie lacks a protected property interest because it has no cognizable claims against JPMorgan; (2) the Bar Order did not deprive Ritchie of a protected interest because it did not prevent Ritchie from pursuing direct claims against JPMorgan; (3) Ritchie was given notice and an opportunity to be heard before the court entered the Bar Order; and (4) Ritchie had the opportunity to participate in the United States' forfeiture remission process where the settlement proceeds were distributed.

29

*Second*, the district court had subject matter jurisdiction to approve the JPMorgan settlement. The Receiver's power to sue JPMorgan is not a matter of constitutional standing and does not implicate the district court's subject matter jurisdiction. The approval of the settlement by the Receiver in a clawback action against JPMorgan to recover for the Receivership entities' Ponzi-scheme-related harm, and the entry of a corresponding Bar Order, fell squarely within the district court's jurisdiction.

*Third*, the Receiver had standing to sue JPMorgan in his capacity as Receiver for the dozens of entities in the Receivership owned or controlled by Petters. The Receiver alleged that Petters engaged in fraudulent transfers with JPMorgan in furtherance of the Ponzi scheme, which caused harm to the entities in the Receivership. Accordingly, the Receiver had standing to settle claims with JPMorgan related to the furtherance of the Ponzi scheme, which caused harm to the Receivership, on behalf of the Receivership entities who were creditors of Petters.

**IV.** The district court was within its discretion to approve the Receiver's final accounting and recordkeeping procedures. The district court properly found that, consistent with its order, the final accounting included sufficiently detailed summaries of Receivership recoveries, expenses, and distributions. The additional information requested by Ritchie had been disclosed in reports, motions, and fee

applications previously filed by the Receiver. In approving the recordkeeping procedures, the district court correctly found that the Receivership records could not be made available to the public because many were subject to confidentiality orders and it was reasonable to require a requesting party to pay for the costs incurred in the production of documents by the Receiver.

## STANDARD OF REVIEW

Any action by a trial court supervising an equity receiver is committed to the court's sound discretion and will not be disturbed absent a clear showing of abuse. *S.E.C. v. Ark. Loan & Thrift Corp.*, 427 F.2d 1171, 1172 (8th Cir. 1970); *accord S.E.C. v. Quan*, 870 F.3d 754, 759 (8th Cir. 2017). "Abuse of discretion will be found only when the trial court's decision is based on an erroneous view of the law or a clearly erroneous assessment of the evidence." *Richards v. Aramark Services, Inc.*, 108 F.3d 925, 927 (8th Cir. 1997).

## ARGUMENT

## I.    THIS APPEAL SHOULD BE DIMISSED AS MOOT

Under Article III of the Constitution, federal courts are only allowed to adjudicate actual, ongoing cases or controversies. *Potter v. Norwest Mortg., Inc.*, 329 F.3d 608, 611 (8th Cir. 2003) (citing *Deakins v. Monaghan*, 484 U.S. 193, 199 (1988); *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975)). The Article III "case or controversy" requirement "denies federal courts the power to decide questions that

31

cannot affect the rights of litigants in the case before them, and confines them to resolving real and substantial controversies admitting of specific relief through a decree of a conclusive character." *POET Biorefining - Hudson, LLC v. U.S. Envtl. Prot. Agency*, 971 F.3d 802, 805 (8th Cir. 2020) (quoting *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990)). The case or controversy requirement is jurisdictional. *Id.* Thus, "[w]hen an action no longer satisfies the case or controversy requirement, the action is moot and a federal court must dismiss the action" for lack of subject matter jurisdiction. *Potter*, 329 F.3d at 611.

To meet the "case or controversy" requirement of Article III, the parties must have a "continuing personal stake in the outcome of the lawsuit." *Id.* (quotation omitted). Once a party has settled its claims, it ceases to have a personal stake in the outcome of the case, and there is no longer a live case or controversy within the meaning of Article III. *Id.* When faced with this situation, "federal court should normally dismiss [the] action as moot." *Id.* (dismissing appeal as moot under Article III after party settled claims because he no longer had a "continuing personal stake in the litigation"); *see also Ruppert v. Principal Life Ins. Co.*, 705 F.3d 839, 843 (8th Cir. 2013) (dismissing appeal as moot because party "relinquished his claims [via settlement], and there [wa]s no longer an Article III case or controversy"); *Anderson v. CNH U.S. Pension Plan*, 515 F.3d 823 (8th

32

Cir. 2008) (similar); *Huston v. Mitchell*, 908 F.2d 275, 278 (8th Cir. 1990) (holding appellant's claims for relief were moot following settlement agreement).

Once Ritchie settled to achieve the "limited purpose" for which it was allowed to intervene—obtaining a lift of the Litigation Stay (SA.106, R.Doc.2784 at 10)—its claims became moot. Given that Ritchie has promised not to execute on any Receivership assets, including assets forfeited to the Government, and has agreed "not to file any additional motions against the Petters Receivership, or make any additional requests, or otherwise take any other action in the Petters Receivership," SADD.5, R.Doc.3083 at 6, it no longer has a personal stake in the litigation and there is no active case or controversy for the Court to adjudicate.

Further, Ritchie's appeal from the order approving the JPMorgan Settlement is moot because the Receiver distributed the settlement payment to the Government over three years ago, A.450, R.Doc.3058 at 2, and those funds have been distributed as part of the forfeiture remission process, SA.142-45, 08-cr-364.R.Docs.671-72. *See McFarland v. Winnebago S., Inc.*, 119 F. App'x 834, 835 (8th Cir. 2004) (finding appeal moot where receiver had already distributed assets). "Occasionally, due to the passage of time or a change in circumstances, the issues presented in a case will no longer be 'live' preventing a federal court from granting effective relief. When this occurs, and the court cannot grant specific and conclusive relief as to an issue raised, then the issue is moot." *Nebraska v. Cent.*

33

*Interstate Low-Level Radioactive Waste Compact Comm'n*, 187 F.3d 982, 987 (8th Cir. 1999) (cleaned up).

Finally, Ritchie's only claim among the Receivership Defendants is against Petters individually. The net proceeds of Petters' individual assets have all been forfeited to the United States for remission. A.515, R.Doc.3234 at 7. The Receiver possess no funds pertaining to the Petters individual receivership account. *Id.* Accordingly, the accounting and distribution of the remaining assets of the Receivership is of no import to Ritchie.

For all these reasons, the appeal should be dismissed as moot.

## II. THIS APPEAL IS FORECLOSED BY RITCHIE'S PROMISE TO APPELLEES AND THE DISTRICT COURT

### A. Ritchie Promised To Take No Further Action In The Receivership, Thereby Waiving Its Right To This Appeal.

Even if this appeal is not considered moot, it should still be dismissed because Ritchie waived its right to appeal. Waiver is "a voluntary and intentional relinquishment of a known right." *Farley v. Benefit Tr. Life Ins. Co.*, 979 F.2d 653, 659 (8th Cir. 1992) (quotation omitted). A party may waive—and appellate courts will enforce the waiver of—the right to appeal a district court's orders or judgments. *See, e.g.*, *In re Lybarger*, 793 F.2d 136, 138 (6th Cir. 1986) (enforcing waiver of right to appeal district court's attorney's fees award); *Brown v. Gillette Co.*, 723 F.2d 192, 193 (1st Cir. 1983) (same); *Ilardo v. U.S. Postal Serv.*, 5 F.3d

34

1504 (Table), 1993 WL 302648 (Fed. Cir. 1993) (enforcing total waiver of appeal rights). Waiver of the right to appeal is frequently addressed by the appellate court rather than the district court. *See, e.g.*, *In re Lybarger*, 793 F.2d at 138.

Here, the stay prevented Ritchie from pursuing litigation against Petters. Hence, it struck a deal. In exchange for the Government and Receiver's promise not to oppose a motion to lift the stay, Ritchie agreed and represented to the district court that it would dismiss its pending appeal, and that it would not execute against any Petters Receivership assets or "file any additional motions against the Petters Receivership, or make any additional requests, or otherwise take any other action in the Petters Receivership unless it is necessary to clarify or interpret the scope and terms of this Stipulation." SADD.5, R.Doc.3083 at 6; *accord* SA.164, R.Doc.3113 at 3.

This language unambiguously waives Ritchie's right to take ***any action*** in the Petters Receivership, including filing an appeal. The stipulation was negotiated by sophisticated parties, represented by counsel. Ritchie was fully aware of the disposition of the Receiver's proceeds from the JPMorgan Settlement at the time it entered into the Stipulation. Further, the appeal Ritchie dismissed as part of the settlement raised several of the same issues as this appeal. *See* A.288-89, R.Doc.2984 at 10-11. And Ritchie promised to take no further action in the Receivership despite its knowledge that the Receiver would continue to

35

administrate the Receivership.  SADD.5, R.Doc.3083 at 6.  Although Ritchie may now be dissatisfied with the deal it struck, it is nonetheless bound by its promise. *Cf. Brown*, 723 F.2d at 192-93 ("[T]hose who give up the advantage of a lawsuit in return for obligations contained in a negotiated decree, rely upon and have a right to expect a fairly literal interpretation of the bargain that was struck and approved by the court." (quotation omitted)).  Ritchie has waived its appellate rights and accordingly, this Court should dismiss the appeal.

### B. Ritchie Is Judicially Estopped From Disavowing Its Promise.

Moreover, Ritchie is judicially estopped from walking back its promise not to further participate in the Receivership.  "Judicial estoppel protects the integrity of the judicial process by preventing a party from taking a position in a legal proceeding that is inconsistent with one it took earlier, simply because its interests have changed."  *United States v. Hamed*, 976 F.3d 825, 828 (8th Cir. 2020) (cleaned up).  It "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (quotation omitted). For example, if a party makes a representation to the court and the court relies on the representation, the party may not later contradict that representation.  *See, e.g.*, *id.* at 752 (applying judicial estoppel where a party represented to the Court that the proposed judgment was in the party's best interest and the Court relied on that

Appellate Case: 21-2973     Page: 48     Date Filed: 01/25/2022 Entry ID: 5120636

representation in entering the judgment).  Because judicial estoppel protects the integrity of the judicial process, a court may raise it *sua sponte*.  *Davis v. District of Columbia*, 925 F.3d 1240, 1256 (D.C. Cir. 2019) (citing *Allen v. C&H Distribs., LLC*, 813 F.3d 566, 571 n.4 (5th Cir. 2015)).

The analysis for when judicial estoppel is to be applied cannot be reduced to a formulaic test.  *Maine*, 532 U.S. at 750.  However, the Supreme Court has recognized three non-exclusive factors that courts should consider: (1) the party's later position is clearly inconsistent with the earlier position; (2) the party persuaded the court to accept the earlier positions such that judicial acceptance of the later position would create the perception that either the first or second court was misled; and (3) the party would obtain an unfair advantage or impose an unfair detriment on the opposing party if not estopped.  *Id.*; *accord Hamed*, 976 F.3d at 829.  Ultimately, judicial estoppel is an equitable doctrine and may be invoked by a court at its discretion.  *Maine*, 532 U.S. at 750.

Ritchie made the representation to the court that it would not take any additional action in the Receivership if the Litigation Stay was lifted, and the district court relied on that representation in lifting the Litigation Stay.  The district court reminded Ritchie of this promise when it overruled Ritchie's objections to the final accounting and termination of the Receivership: "Ritchie has previously stipulated in this case that it will not use any judgments it obtains against Thomas

37

J. Petters to execute against Receivership assets or otherwise interfere with the Receivership." ADD.11, R.Doc.3274 at 6. Ritchie's objections and appeal are clearly inconsistent with its prior representation that it would take no further action.

Ritchie would obtain an unfair advantage if it was allowed the benefit of the lifted stay and the right to participate in the Receivership. *Cf. Patriot Cinemas, Inc. v. Gen. Cinemas Corp.*, 834 F.2d 208, 213 (1st Cir. 1987) (estopping party from pursuing claim where it represented it would not pursue the claim in order to avoid stay). Additionally, the Government and the Receiver would suffer an unfair detriment in that they relied on the representation in agreeing not to oppose lifting the stay. In essence, Ritchie made a deal with the district court and the other parties in order to obtain a lift of the stay. Having obtained the lift of that stay, Ritchie should not be allowed to play "fast and loose with the courts" by disavowing its promise. *Id.* The Court should dismiss this appeal.

If the Court allows this appeal to proceed, it should affirm the Judgment of the district court because Ritchie identifies no abuse of discretion.

## III. APPROVAL OF THE JPMORGAN SETTLEMENT SHOULD BE AFFIRMED

The district court was within its discretion to approve the Receiver's $2.5 million settlement with JPMorgan and enter the Bar Order. Upset that it received "no portion of that settlement" (Br.35), and has not been able to recover directly

38

from JPMorgan, Ritchie appeals this decision.  Ritchie neglects to mention that it was entitled to participate in the remission process with all the other victims, where these funds were distributed.  In addition, Ritchie did recover its pro rata share of the settlement funds received by the PCI and PGW bankruptcy estates. Yet Ritchie seeks to blow up the JPMorgan Settlement in the vain hope that it may recover additional investment account funds for itself to the detriment of other rightful claimants.  Once again, Ritchie believes it has a special entitlement ahead of the Receiver and all creditors and victims of the Petters fraud, ignoring the inconvenient truth that its claims against JPMorgan have been dismissed with prejudice.

## A.    The District Court Did Not Deprive Ritchie of Due Process.

Ritchie claims that the district court deprived it of its property (that is, its dismissed claims against JPMorgan) without due process by entering the Bar Order.  Ritchie's argument is unfounded.  This is not the first time Ritchie has been before this Court arguing that his due process rights were violated during the course of the Receivership.

When considering a due process claim, the Court determines whether a party was deprived of a protected interest and, if so, what process was due.  *Post v. Harper*, 980 F.2d 491, 493 (8th Cir. 1992).  The Court should affirm the district court for several reasons:  (1) Ritchie does not have a protected property interest

39

against JPMorgan to begin with; (2) the Bar Order did not deprive Ritchie of a protected interest because it did not prevent Ritchie from pursuing direct claims against JPMorgan; (3) Ritchie was given ample notice and opportunity to be heard before the court entered the Bar Order; and (4) it had an opportunity to attempt to recover its losses through the United States' forfeiture remission process.

### 1. *Ritchie Has No Protected Interest Against JPMorgan.*

As a threshold matter, Ritchie lacks a protected property interest because—aside from the fact that Ritchie has settled and/or waived its rights (as discussed above)—it has no cognizable claims against JPMorgan. Indeed, one district court has dismissed Ritchie's entire lawsuit against JPMorgan with prejudice and another has denied Ritchie's motion to intervene in the Receiver's action against JPMorgan. Judge Frank dismissed Ritchie's complaint against JPMorgan with prejudice, and the Bar Order was only one of many bases for the dismissal. *Ritchie v. JPMorgan*, 2021 WL 2686079, at *4-12. Judge Frank also based the dismissal on the fact that Ritchie lacked standing because its claims belonged to the Petters bankruptcy and Receivership estates, that several of Ritchie's claims were time-barred, and that each of Ritchie's causes of action failed to state a claim. *Id.* Even apart from the Bar Order, Ritchie has no viable claims against JPMorgan.

40

When Ritchie previously moved to intervene "to protect [its] interests and demonstrate the Receiver's lack of standing" in the Receiver's action against JPMorgan, Judge Nelson denied Ritchie's motion to intervene for lack of standing. *Kelley v. JPMorgan*, 2018 WL 1720913, at *5, *8. Judge Nelson rejected Ritchie's assertion that it should be permitted to intervene to take part in settlement negotiations, noting "that Ritchie cannot possibly be granted 'a seat at the settlement table' when it is not a party to this action and when its own claims against JPMC have been dismissed with prejudice." *Id.* at *8 n.5. The court further held that "Ritchie lacks a legally cognizable interest in the litigation" because "[a]llowing Ritchie to intervene after its own claims have been dismissed would be tantamount to giving him a second opportunity to relitigate his claims in this forum." *Id.* at *8. Ritchie now seeks yet another opportunity to relitigate its failed claims via this appeal. Ritchie should not be allowed to use this appeal as a work-around his unsuccessful attempt to challenge the Receiver's standing in the Receiver's JPMorgan case.

Further, Ritchie has no cognizable claims against JPMorgan relating to Petters' investment accounts because those claims belong to the Receiver who pursued them as avoidable transfers on behalf of Petters' creditor-entities in the Receivership. Individual creditors cannot repackage the Receiver's claims into their own separate suits. "[W]here a district court appoints a receiver to

41

coordinate interests in a troubled entity, that entity's investors will have hypothetical claims they could independently bring but for the receivership: the receivership exists precisely to gather such interests in the service of equity and aggregate recovery." *Zacarias v. Stanford Int'l Bank, Ltd.*, 945 F.3d 883, 899 (5th Cir. 2019); *see also* 37 Am. Jur. 2d Fraudulent Conveyances and Transfers § 160 (a receiver "generally has the exclusive right to bring an action to recover fraudulently conveyed property, and such an action may not be brought by a creditor") (citing cases, including *Motlow v. S. Holdings & Sec. Corp.*, 95 F.2d 721 (8th Cir. 1938)).

### 2. The Bar Order Does Not Deprive Ritchie of a Protected Interest.

The district court was correct in holding that Ritchie was not deprived of a protected interest by virtue of the Bar Order because it only barred claims that belonged to the Receiver or are derivative of those claims, not any direct claims Ritchie may have against JPMorgan. ADD.2-3, R.Doc.2990 at 2-3. A district court's entry of a bar order, like other actions in overseeing an equity receivership, is reviewed for abuse of discretion. *S.E.C. v. Safety Fin. Serv., Inc.*, 674 F.2d 368, 373 (5th Cir. 1982).

Receivership courts frequently exercise their discretion to issue bar orders to prevent parties from bringing lawsuits that would dissipate receivership assets or interfere with the collection and distribution of assets belonging to the

42

receivership. *Zacarias*, 945 F.3d at 897 (recognizing that court's broad powers in an equity receivership "can include both stays of claims in other courts against the receivership and bar orders foreclosing suit against third party defendants with whom the receiver is also engaged in litigation" (footnotes omitted)).

Bar orders serve as an important tool for the district court to preserve receivership assets "subject to multiple claims in various locales, as well as preventing piecemeal resolution of issues that call for a uniform result." *Schauss v. Metals Depository Corp.*, 757 F.2d 649, 654 (5th Cir. 1985) (quotation omitted). It would undermine the receivership if investor-claimants such as Ritchie were allowed to "jump the queue, circumventing the receivership in an attempt to recover [more than their] share." *Zacarias*, 945 F.3d at 896.

Bar orders also play an integral role in the facilitating of settlements. *In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 494 (11th Cir. 1992). Class action and securities settlements often incorporate settlement bar orders. *See id.*; *Eichenholtz v. Brennan*, 52 F.3d 478, 483 (3d Cir. 1995); *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 160 (4th Cir. 1991); *In re IBP, Inc. Sec. Litig.*, 328 F. Supp. 2d 1056, 1066-67 (D.S.D. 2004). Settling parties obtain finality because they are assured that they will not be subject to further claims that arise from or relate to the claims being settled by the receiver.

43

Public policy supports the use of bar orders in cases such as this when they are "essential to settling the litigation." *S.E.C. v. Quiros*, 966 F.3d 1195, 1199-200 (11th Cir. 2020). The Bar Orders entered by the Receivership and bankruptcy courts were an essential and necessary part of the JPMorgan Settlement because they gave the JPMorgan defendants assurance that they would not be subject to future suits alleging any of the claims being settled. A.214, R.Doc.2979 at 11. Failure to obtain the bar order would have rendered the JPMorgan Settlement null and void. A.214, 217, R.Doc.2979 at 11, 14.

Moreover, as the district court found, the Bar Order did not deprive Ritchie of any protected right because it does not bar any direct claims Ritchie might have against JPMorgan. ADD.3, R.Doc.2990 at 3. Direct claims do not not fall within the definition of "Barred Claims." A.231, R.Doc.2980-1 at 6. Only a claim that "belongs or belonged to the Receiver, whether or not already asserted by the Receiver, or is derivative of such a Claim" is barred. *Id.* Because the Bar Order forecloses only claims duplicative and derivative of claims asserted and settled by the Receiver, the district court did not abuse its discretion or violate Ritchie's due process rights by including them in Bar Order. *See Zacarias*, 945 F.3d at 897 (holding bar order falls squarely within receivership court's authority when it only precludes derivative and dependent claims).

Ritchie, for the first time on appeal, argues that the Bar Order is "impermissibly vague" and unenforceable because it does not define "what constitutes a 'derivative' or 'direct' claim." The Court does not ordinarily "consider an argument raised for the first time on appeal." *United States v. Ritchie*, 620 F.3d at 835 (quotation omitted).

In any case, there is nothing vague about the distinction between derivative and direct claims. "The relevant inquiry for determining whether a claim is direct or derivative is whether the injury to the individual plaintiff is separate and distinct from the injury to other persons in a similar situation as the plaintiff. If the injury is not separate and distinct, only a derivative action is available." *Popp Telecom, Inc. v. Am. Sharecom, Inc.*, 361 F.3d 482, 492 (8th Cir. 2004) (citation and quotations omitted).

Indeed, courts are frequently required to determine whether a Ponzi scheme investor's claims are derivative of the receiver's or bankruptcy trustee's claims or are direct claims that are separate and distinct. For example, in a similar context, the Minnesota Court of Appeals analyzed whether an investor had authority to bring claims arising out of the Petters Ponzi scheme, as opposed to claims belonging solely to the Petters bankruptcy estate. *Greenpond S., LLC v. Gen. Elec. Cap. Corp.*, 886 N.W.2d 649, 654-58 (Minn. Ct. App. 2016). The court found that the question turned on whether the claims were "direct" (in which case

45

the investor had authority to bring them) or "derivative" (in which case only the bankruptcy trustee could pursue them on behalf of all creditors). *Id.* at 655. The court ultimately held that investor's claims were derivative of the Petters bankruptcy estate's claims, rather than direct claims, because the investor "failed to allege an injury separate and distinct from an injury suffered by the business entities that were utilized in a Ponzi scheme." *Id.* at 658; *accord Ritchie Capital Mgmt., LLC v. Gen. Elec. Cap. Corp.*, 121 F. Supp. 3d 321, 335-36 (S.D.N.Y. 2015) (holding that Ritchie lacked standing, and claims belonged exclusively to bankruptcy trustee, because Ritchie's claims did not arise from any direct harm to Ritchie, but rather only alleged general harm applicable to all creditors of Petters), *aff'd*, 821 F.3d 349, 351 (2d Cir. 2016) (concluding "Ritchie lacks standing to assert its claims because Ritchie has not alleged a particularized injury"); *Ritchie v. JPMorgan*, 2021 WL 2686079, at *5-6 (determining Ritchie's claims were derivative of the Receiver and Trustees' claims, rather than stemming from any direct and particularized injury to Ritchie); *Gecker v. Gen. Elec. Cap. Corp.*, No. 14 C 8447, 2015 WL 5086398, at *11 (N.D. Ill. July 27, 2015) (plaintiff lacked standing because injury alleged was not "separate and distinct" from injury suffered by other creditors).

Ritchie also complains that the Bar Order did not list the entities in the Receivership by name (Br.40). But Ritchie does not cite any authority that would

46

require this. This is because there is simply no legal requirement to list all 150 receivership entities in the Bar Order. The Receivership Order defines the entities included in the Receivership to include "any affiliates, subsidiaries, divisions, successors, or assigns owned 100% or controlled by [Petters]." A.56-57, R.Doc.127 at 4-5. And the Receiver provided Ritchie an organizational chart listing all entities that were 100% owned or controlled by Petters. A1145-46, R.Doc.3272 at 39-40.

In sum, the district court was well within its discretion in entering the Bar Order because "[a]llowing investors [like Ritchie] to circumvent the receivership would dissolve th[e] orderly process—circumvention that must be foreclosed for the receivership to work." *Zacarias*, 945 F.3d at 902. There was no abuse of discretion or due process violation in entering the Bar Order "to effectuate and preserve the coordinating function of the receivership." *Id.*; *see also S.E.C. v. DeYoung*, 850 F.3d 1172, 1183 (10th Cir. 2017) (finding no abuse of discretion in entering bar order as part of approval of settlement in receivership case).

### 3. *Ritchie Was Afforded Due Process.*

Even if Ritchie was deprived of a protected right against JPMorgan (which it was not), the district court provided sufficient due process to Ritchie before it entered the Bar Order. Due process merely requires "adequate notice and procedures to contest the deprivation of property rights." *United States v. Ritchie*,

47

620 F.3d at 835. The "fundamental requirement" of due process is met when a party is afforded an "opportunity to be heard at a meaningful time and in a meaningful manner." *Id.* (quotation omitted).

As discussed above, a district court overseeing a receivership is "empowered to bar judicial proceedings not before it to protect the receivership." *Zacarias*, 945 F.3d at 897. In this situation, the process due to investors is notice and opportunity to be heard on the proposed settlement and bar order. *Id.* While Ritchie claims to be an "absent party," (Br.35-36), as its level of litigation activity in the Receivership suggests, Ritchie has been anything but absent. Ritchie was on notice, filed the sole objections, and participated in the oral argument on the Settlement and Bar Order.

Ritchie tries to distinguish *Zacarias* (Br.36-37) on the basis that the objecting investors in that case were allowed to file proofs of claim to recover a share of the settlement funds through the receivership process. However, the difference between this case and *Zacarias* is merely the channel used by the courts for the recovery process. Here, the parties and court were required to channel recoveries through the United States' forfeiture remission process pursuant to the Coordination Agreement, because the Government held the right to forfeit all

48

funds in Petters' JPMorgan accounts.[9]  In *Zacarias*, the bar orders channeled investors' recovery associated with the settlement through the receivership's distribution process.  *Zacarias*, 945 F.3d at 903.  However, in *Zacarias*, there was no Coordination Agreement that required the receiver to forfeit these recovered funds to the Government.  *See* SADD.15, R.Doc.1351-1 §III.B.2.  Ritchie did not have claims against any Receivership entities, only against Petters individually, and the remission funds for all victims were increased with the settlement proceeds.  Ritchie was not deprived of an entitlement to recover for its Ponzi-scheme losses simply because the Settlement and Bar Order channeled investors' recovery through the United States' forfeiture remission process.   "[W]hile

---

[9]   Judge Kyle, as part of Petters' criminal sentence, granted the United States' motion for a preliminary order of forfeiture that included "any and all funds in JP Morgan Accounts held in the name of Thomas J. Petters." *United States v. Petters*, Preliminary Order of Forfeiture, No. 08-cr-364 (RHK/AJB), R.Doc. 395 (D. Minn., Mar. 26, 2010).  The criminal forfeiture statute provides that all right, title, and interest in property subject to forfeiture "vests in the United States upon the commission of the act giving rise to forfeiture." 21 U.S.C. § 853(c). "Thus, after a crime has been committed, title to the forfeitable property, by operation of the relation-back clause, actually belongs to the government." *United States v. Petters*, No. 08-cr-364, 2013 WL 269028, at \*4 (D. Minn. Jan. 24, 2013) (quotation omitted).  The forfeiture statute provides for an "ancillary proceeding" in which "any person, other than the defendant, asserting a legal interest in property which has been ordered forfeited to the United States may ... petition the court for a hearing to adjudicate the validity of his alleged interest in the property." *United States v. Petters*, 857 F. Supp. 2d 841, 844 (D. Minn. 2012) (quotation omitted).

49

[Ritchie] may not have received the process it strategically desired, it has received the process it was constitutionally due." *United States v. Ritchie*, 620 F.3d at 835.

**B.    The District Court Had Subject Matter Jurisdiction.**

Ritchie questions the district court's subject matter jurisdiction over the Receiver's settlement with JPMorgan, contending that the district court does not have jurisdiction over claims that the Receiver lacks standing to assert.  "This argument confuses two entirely separate issues. … [T]he district court's determination of the merits of each claim (and the Receiver's standing to assert it) is separate and distinct from the court's power to hear it."  *Eberhard v. Marcu*, 530 F.3d 122, 128-29 (2d Cir. 2008).

Upon appointment, a receiver, like a trustee in bankruptcy, stands in the place of the entities for which he has been appointed receiver and has authority to bring any claim in their place.  *Scholes v. Lehmann*, 56 F.3d 750, 753-54 (7th Cir. 1995).  The Receiver's authority to sue is not a question of constitutional standing or justiciability.  *See In re Wilton Armetale, Inc.*, 968 F.3d 273, 280-81 (3d Cir. 2020) (a trustee's "'standing' to pursue causes of action that become the estate's property means its *statutory* authority … not its *constitutional* standing to invoke the federal judicial power"); *Grede v. Bank of N.Y. Mellon*, 598 F.3d 899, 900 (7th Cir. 2010) (explaining that courts often use the term "standing" to refer not to

50

constitutional "ingredients of standing," but rather a trustee's "authority" to act, which "is a question on the merits rather than one of justiciability").

A receivership court has "jurisdiction to decide all questions of the preservation, collection and distribution of [the] assets" of the entities in receivership. *Eberhard*, 530 F.3d at 129 (quotation omitted). "So long as an action commenced by a court appointed receiver seeks to accomplish the ends sought and directed by the suit in which the appointment was made, such action or suit is regarded as ancillary so far as the jurisdiction of the court of the United States is concerned." *Id.* (quoting *Tcherepnin v. Franz*, 485 F.2d 1251, 1255-56 (7th Cir. 1973)). The approval of a settlement by the receiver in an ancillary action to recover for receivership entities' Ponzi-scheme harm, and the entry of a corresponding bar order, fall squarely within the receivership court's jurisdiction. *Zacarias*, 945 F.3d at 899-901. The district court unquestionably had jurisdiction to approve the JPMorgan Settlement.

## C.   The Receiver Had Standing to Settle with JPMorgan.

In any event, the Receiver had standing to sue JPMorgan in his capacity as Receiver for the dozens of entities owned or controlled by Petters, which comprised the Receivership and which had claims against Petters. A "receiver's standing to bring a fraudulent conveyance claim will turn on whether he represents the transferor only or also represents a creditor of the transferor." *Eberhard*, 530

51

F.3d at 133. When a receivership includes numerous entities, some of which are creditors of the transferor, the receiver can bring fraudulent transfer claims on behalf of the creditor entities that are in the receivership. *Lehmann*, 56 F.3d at 753-54; *Eberhard*, 530 F.3d at 132.[10] "Receivership [e]ntities are considered victims of the fraud and thus creditors of the Ponzi scheme." *Zayad v. Assoc. Bank, N.A.*, 779 F.3d 727, 737 (8th Cir. 2015).

A receiver has standing on behalf of entities in the receivership to recover funds wrongfully taken or withheld from the receivership estate to enable the receivership to pay the liabilities it has assumed to the investors in or creditors of the receivership estate. *Rotstain v. Mendez*, 986 F.3d 931, 940-41 (5th Cir. 2021); *Zacarias*, 945 F.3d at 900-01. As the Fifth Circuit has described the rule:

> [A] federal equity receiver has standing to assert only the claims of the entities in receivership, and not the claims of the entities' investor-creditors, but the knowledge and effects of the fraud of the principal of a Ponzi scheme in making fraudulent conveyances of the funds of the corporations under his evil coercion are not imputed to his captive corporations. Thus, once freed of his coercion by the court's appointment of a receiver, the corporations in receivership, through the receiver, may recover assets or funds that the principal fraudulently diverted to third parties without receiving reasonably equivalent value.

---

[10] In *Eberhard*, the receiver was appointed only over the assets of the individual fraudulent actor and not the corporation and therefore the receiver lacked standing. The court noted that "had the scope of the receivership not been narrowed, the entire issue [of standing] might have been avoided." *Eberhard*, 530 F.3d at 134 n.11.

Appellate Case: 21-2973    Page: 64    Date Filed: 01/25/2022 Entry ID: 5120636

*Jarvey v. Democratic Senatorial Campaign Comm., Inc.*, 712 F.3d 185, 190 (5th Cir. 2013); *see also DeYoung*, 850 F.3d at 1180-82; *Marion v. TDI Inc*., 591 F.3d 137, 148-49 (3d Cir. 2010); *Donell v. Kowell*, 533 F.3d 762, 776-77 (9th Cir. 2008); *Lehmann*, 56 F.3d at 754. This rule is entirely consistent with and supported by Judge Richard Kyle's decision in *Kelley v. Coll. of St. Benedict*, 901 F. Supp. 2d 1123, 1128 (D. Minn. 2012) ("A receiver may sue only on behalf of *receivership entities*" (emphasis added)).[11]

As a court-appointed equity receiver, the Receiver had standing to bring fraudulent transfer claims on behalf of the entities owned or controlled by Petters in the Receivership—it was on their behalf as creditors of Petters that the Receiver brought the fraudulent transfer claims against JPMorgan. A.86, 89, 10-cv-4999.R.Doc.1 ¶¶1, 14. The Receiver sued JPMorgan to recover the funds taken from Petters' investment account for the benefit of victims of Petters' fraud. A.95, 103, 10-cv-4999.R.Doc.1 ¶¶28, 61. The Receiver alleged that Petters engaged in

---

[11] Judge Kyle did not address whether the Receiver had standing to bring state-law fraudulent transfer claims on behalf of the creditor entities in the Receivership. Rather, the court found that the Receiver could not bring Federal Debt Collections Procedures Act claims because "[o]nly the United States can bring FDCPA claims and [the Receiver] cannot sue on the United States' behalf because the government is not in the receivership and has not assigned its rights to him." *Id.* at 1131. The case was settled after oral argument on appeal for $600,000 of a $2,000,000 claim. SA.85-86, R.Doc.2648-1 at 2-4.

53

fraudulent transfers with JPMorgan in furtherance of the Ponzi scheme, which caused harm to the entities in the receivership estate. A.90, 95, 10-cv-4999.R.Doc.1 ¶¶16, 28-29. The Receiver claimed JPMorgan "stepped ahead of the Ponzi scheme's victims and creditors to recover the nearly $20 million that PGW owed under the credit line." A.103, 10-cv-4999.R.Doc.1 ¶61. These creditors included entities in the Receivership. Accordingly, the Receiver had standing to bring claims on behalf of the Receivership entities who were creditors of Petters.[12]

## IV.   THE FINAL ACCOUNTING SHOULD BE AFFIRMED

### A.   The District Court Was Within Its Discretion to Approve the Final Accounting.

At the conclusion of this thirteen-year equity receivership, which included 3,200-plus docket submissions and court approval for every material settlement and action disposing of Receivership assets, the district court ordered the Receiver to file an accounting to include "a description of the value of all assets taken into the receivership and all expenses associated with the receivership." A.508,

---

[12] Even if Ritchie's assertion that the Receiver lacked standing were correct (it is not), it would not affect the Receiver's ability to enter into a settlement agreement. The Receiver filed the complaint against JPMorgan and the parties agreed to stay the action following the court's suggestion and consistent with section I.C of the Coordination Agreement. SADD.13, R.Doc.1351-1 §I.C. The Receiver need not demonstrate that he would have ultimately prevailed in the litigation, or even that he would have survived a motion to dismiss, in order to settle the dispute and dismiss the action. In determining whether to approve a settlement, the court should not have a "mini-trial" on the merits. *See PW Enters. v. N.D. Racing Comm'n*, 540 F.3d 892, 899 (8th Cir. 2008).

Appellate Case: 21-2973     Page: 66     Date Filed: 01/25/2022 Entry ID: 5120636

R.Doc.3223 at 4. The Receiver did just that, filing two reports (one for Petters' individual assets, A.509 R.Doc.3234, and one for the Receivership as a whole, along with the related bankruptcy estates, A.517-33, R.Docs.3235-3235-1), which detailed the steps taken by the Receiver, the Receivership's source of recoveries and the amounts, all expenses paid by the Receiver and the purpose of the expenses, and the Receivership distributions. A.509-33, R.Docs.3234-3235-1. Despite this detail, Ritchie claims these reports are insufficient. Ritchie is incorrect. The Receiver acted in accordance with the district court's order.

As discussed below, the district court acted within its broad discretion and the approval of the final accounting should be affirmed.

### 1. The Receiver's Final Accounting Complied with the District Court's Order.

There was no abuse of discretion in approving the final accounting because the Receiver's accounting complied with the district court's order. As Ritchie recognizes (Br.21), there is no specific standard for what a receiver must include in a final accounting. Instead, the supervision of a receivership—and, accordingly, the frequency, content, and manner of filing reports—is committed to the sound discretion of the district court. *Ark. Loan & Thrift Corp.*, 427 F.2d at 1172. The judge "who appoints, supervises and directs [the receiver's] action, necessarily knows, better than any record can teach an appellate court, what [the] appointee has done"; thus, the appointing judge's oversight is "largely discretionary and …

55

should not be disturbed unless there has been a manifest disregard of right and reason." *Wilkinson v. Wash. Tr. Co. of N.Y.*, 102 F. 28, 30 (8th Cir. 1900). As the court appointing the receiver, supervising the operations of the receivership, and receiving the receiver's reports, the district court was in the best position to set the reporting requirements for the receiver and determine the adequacy of his reports. This is particularly true here where the district court guided this Receivership for 13 years.

The district court ordered the Receiver to file an accounting of the receivership which "shall include a description of the value of all assets taken into the receivership and all expense associated with the receivership." A.508, R.Doc.3223 at 4. Ritchie does not appeal this order. The Receiver's accounting complies with the district court's order. It described the total value of the Receivership assets broken down by the source of the recovery. A.521, R.Doc.3235 at 5; A.529-30, R.Doc.3235-1 at 1-2. It also described the total value of expenses incurred broken down by type, including legal fees, finance and advisory fees, operational expenses, and individual defendants' criminal defense fees. A.514-15, R.Doc.3234 at 6-7; A.521-24; R.Doc.3235 at 5-8; A.529, R.Doc.3235-1 at 1. Finally, the Receiver detailed all distributions, where the funds came from, and who received them. A.514-15, R.Doc.3234 at 6-7; A.521-24, R.Doc.3235 at 5-8; A.529, 531-33, R.Doc.3235-1 at 1, 3-5. By complying with the

56

requirements of the district court, the Receiver fulfilled his obligations to give an accurate final accounting of the Receivership. As the district court properly found, "[t]he final accountings include sufficiently detailed summaries of Receivership recoveries, expenses, and distributions." ADD.10, R.Doc.3274 at 5.

### 2. *The Information Ritchie Seeks Was Previously Disclosed.*

Ritchie's complaint that the Receiver's Final Accounting "does not afford interested persons or the court even a rudimentary understanding of what occurred during the Receivership" (Br.23) completely ignores the other 3,200-plus submissions on the docket over the course of the thirteen-year equity receivership. As the district court observed, "most of the information that Ritchie seeks has been included in previously filed motions and fee applications." ADD.10, R.Doc.3274 at 5. Among other things, the parties filed 35 motions to approve settlements, 27 motions to approve the sale of property, nine motions to approve the distribution/payment/release of funds, and 33 stipulations for the sale of property.[13] *See generally* Docket. As one example, the Receiver filed a detailed motion requesting authorization to distribute funds, describing in detail the 80 distributions to be made, the source of the funds, and the reasoning for the distributions. SA.167-80, R.Doc.3175.

---

[13] This does not include the Receiver's numerous motions and resulting orders to pay its legal, operating, and advisors fees.

Indeed, every material sale or liquidation of a Receivership asset was disclosed via motion and public hearing, with over 120 hearings on record. ADD.12, R.Doc.3274 at 7. The Receiver additionally filed 74 status reports detailing his actions and describing the money in the Receivership accounts. *See, e.g.*, Docket entries for R.Docs.160, 3213; A.449, R.Doc.3058; SA.146-49, R.Doc.3079. Such disclosures more than adequately "enable interested parties, and the court, to ascertain what the receiver has done in administering the estate (and why) … and to determine whether the receiver has properly executed his trust." *See Mitschele v. Meadown Brook Inv. Corp.*, 197 A. 31, 22 (N.J. Ch. 1938) (quoted by Ritchie (Br.22)).

Ritchie questions specific items in the report relating to Polaroid, Thomas Petters, Inc., and EBP Select Holdings, LLC (Br.26-27) in order to raise non-pertinent issues. But Ritchie failed to raise any of these three specific alleged inadequacies to the district court. A.534-62, R.Doc.3240; A.1104-05, R.Doc.3262; A.1107-75, R.Doc.3272.[14] Having failed to raise these issues before the district court, Ritchie cannot now raise them before this Court. *See Roth v. G.D. Searle & Co.*, 27 F.3d 1303, 1307 (8th Cir. 1994) ("If a party fails to raise an issue for

---

[14] Ritchie brings *new* issues likely because the questions it raised below were answered (as here) by the Receiver's pointing to information in the public record. A.1094-96, R.Doc.3260 at 5-7.

Appellate Case: 21-2973    Page: 70    Date Filed: 01/25/2022 Entry ID: 5120636

resolution by the district court, however, that issue may not be raised before this court.… The district courts cannot be expected to consider matters that the parties have not expressly called to their attention, even when such matters arguably are within the scope of the issues that the parties have raised." (citations and quotation omitted)).

In any case, Ritchie does not have a claim against any receivership entities or affiliated bankruptcy estates in which it raises questions and no other party objected to the accounting. Further, answers to Ritchie's questions are, for the most part, matters of public record in the Receivership or related bankruptcies. The cited entry relating to Thomas Petters, Inc. ("TPI") (Br.26) reflects receipts from TPI while it was in the Receivership (prior to its 2014 bankruptcy), including a recovery from the Chapter 11 of Petters Aviation, LLC arising from an agreed upon allowed unsecured claim of $3,050,000. SA.44, R.Doc.1772 at 7; SA.48, Bankr.08-45136.R.Doc.391 (indicating Petters Aviation's unsecured creditors received a dividend of 22% (rounded)).

The Polaroid entry questioned by Ritchie (Br.25) reflects gross funds from Polaroid Corporation and nine affiliated entities while operating as going concerns in the Receivership before they filed Chapter 11 proceedings (and assumed remaining funds) on December 18, 2008. *See Polaroid I*, 472 B.R. at 22, 27.

59

Ritchie purports to not know about EBP Select Holdings, LLC[15] ("EBP"), despite it being thoroughly explained in the Receiver's Affidavit supporting a motion to approve settlements with former employees who gave up their interests in EBP. SA.65-69, R.Doc.2200 at 13-17; SA.80-83, R.Doc.2214 (order approving settlement). EBP, owned by Petters and certain employees, owned Bluestem Brands, Inc. ("Bluestem") stock. SA.66, R.Doc.2200 at 14. The Receiver obtained court authority to sell the Bluestem stock with the government reserving its rights to forfeit EBP after payment for Bluestem shares. SA.51, R.Doc.1928 at 3. As noted by Ritchie, (Br.26 & n.8), $15,279,024.78 was received by EBP and $10,042,050.84 was forfeited (the balance used to cover Receivership expenses). SA.148, R.Doc.3079 at 3.

Despite thirteen years of public disclosures by the Receiver, Ritchie demands that the final accounting repeat the information in detail. Ritchie asserts that the Receiver is required to identify in the final accounting every entity included in the receivership,[16] describe every article of property owned by any entity and all property disposed of or abandoned, and provide more detail on

---

[15] There is only one EBP entity; the reference to EBP Select Holdings, Inc. noted by Ritchie (Br.27) was in error.

[16] As discussed above, there is no requirement that the Receiver list all the entities and the Receiver has already provided Ritchie with an organizational chart setting forth the entities owned or controlled by Petters. A.1145-46, R.Doc.3272 at 39-40.

60

certain line items. A.554-56, R.Doc.3240 at 21-23. The Receiver's final accounting was not intended to describe in excruciating detail all receipts and disbursements including those already extensively detailed and approved by the district court. Instead, the accounting was intended to summarize the actions taken, assets received, and distributions made, A.508, R.Doc.3223 at 4, which it did, ADD.10, R.Doc.3274 at 5.

### 3. *Ritchie Seeks to Impose Requirements That Do Not Exist.*

Ritchie advances a standard of final accounting that is unsupported by the law. Ritchie relies on *Wilkinson* in arguing that the Receiver's final report should have been more detailed. That case involved denial of add-on fees and not the scope of a final accounting. 102 F. at 30. The only other Eighth Circuit authority cited by Ritchie regarding the scope of an accounting is *Hennepin Cty. v. M.W. Savage Factories*, 83 F.2d 453, 454 (8th Cir. 1936), which is not instructive. The final report was not at issue, but rather whether the receivership or subsequent bankruptcy estate should pay taxes. *Id.* at 455.

In an attempt to impose a ridged, inflexible accounting requirement, Ritchie cites several cases from other jurisdictions that are inapposite. As Ritchie acknowledges (Br.21), the administration of an equity receivership is case-specific. The cases cited by Ritchie involve vastly more simple circumstances with only one entity in the receivership. *See, e.g.*, *Mechanics' Tr. Co of Harrisburg v. Ensminger*

61

*Lumber Co*, 27 F.2d 877, 878 (3d Cir. 1928) (receivers took charge of a single lumber company); *see also Dickie v. Flamme Bros.*, 560 N.W.2d 762, 767 (Neb. 1977) (receivership involving a single corporation). In stark contrast, this 13-year Receivership resulted from a multi-billion dollar Ponzi scheme and involved over 150 entities and several related bankruptcies and ancillary actions.

Other of Ritchie's cases are not applicable because they address wholly different issues than what is required in the final accounting of a receiver. *See In re Sundance Corp., Inc.*, 149 B.R. 641, 650-53 (Bankr. E.D. Wash. 1993) (addressing the extent of a receiver's liability to the estate); *Phelan v. Middle States Oil Corp.*, 154 F.2d 978, 989 (2d Cir. 1946) (noting, but not requiring, that the receivers filed separate final accounts). While the appointing court in *S.E.C. v. Harris*, No. 3:09-CV-1809, 2015 WL 418107 (N.D. Tex. Feb. 2, 2015) determined that the receiver provided an inconsistent accounting that failed to comply with the court's prior orders, that is not the case here. None of the cases cited by Ritchie stand for the proposition that a receiver's final accounting must provide a line-by-line accounting of every specific article of property owned by each entity or all property disposed of or abandoned, as Ritchie demands (Br.23-30).

Ritchie references the final report of the Polaroid Trustee (Br.25), and contends at least as much was required from the Receiver. This is not true, for several reasons. First, the content of a final report in a bankruptcy is standardized

62

and required by statute. 28 U.S.C. § 589b(a)(1) (requiring the Attorney General to issue uniform forms for final reports by Chapter 7 trustees). Second, a Chapter 7 trustee is not serving as an arm of the court monitoring its actions, as is the Receiver. Finally, a Chapter 7 trustee does not have the ongoing oversight of the United States Attorney's office, which brought the motion establishing the Receivership at issue. A.2, R.Doc.12 at 2.

The district court was well within its discretion when it approved the Receiver's detailed final accounting.

## B. The District Court Was Within Its Discretion to Approve the Record Retention Procedures.

The district court was also well within its discretion in approving the Receiver's procedures for record retention. ADD.10, R.Doc.3274 at 5. The Receiver's counsel went to great ends to accommodate Ritchie's concerns regarding record retention. A.1102, R.Doc.3261 at 2. The process was modified considerably to address recommendations of Ritchie and BMO Harris. ADD.7-11, R.Doc.3274 at 2-6. Ritchie objects to these procedures (Br.32-34), not for lack of access, but rather because of a lack of *free* access. Ritchie cites no authority to support its request for unfettered, no-cost access, much less authority to indicate an abuse of discretion by the district court in allowing the Receiver to maintain

63

receivership property[17] and requiring requesting parties to pay the out-of-pocket costs of production.  It is proper for the Receiver to retain the records pending ongoing third-party litigation, at the request of the parties in the on-going litigation (including Ritchie).  As the district court correctly reasoned, "[t]he entire library of Receivership records cannot be made available to the public or to requesting parties because some of the records have been obtained pursuant to confidentiality and protective orders."   ADD.10, R.Doc.3274 at 5.  In addition, some of the information is owned by the bankruptcy estates or liquidating trusts rather than the Receiver.  A.1097, R.Doc.3260, at 8.

Further, "it is reasonable to require a requesting party to pay for the costs incurred in the production" of documents and records by the Receiver.  ADD.10, R.Doc.3274 at 5.  Ritchie mistakenly believes it will be required to pay to access documents when the district court has already "compensated the Receiver to respond to such requests."  Br.33.  That is not the case.  "The charges assessed to Ritchie for obtaining information do not relate to the costs [already] incurred by the Receiver … in previously analyzing and compiling the information in the

---

[17]  Simply because some courts "*permit* the property to be returned to the owner upon termination of the receivership," (Br.32) (citing cases) (emphasis added), does not mean that the district court was required to order the voluminous Receivership records to be returned to imprisoned Petters.

64

[Receivership's] database. They only relate to [new] incremental costs for responding to Ritchie's requests." A.1103, R.Doc.3261 at 3.

Ritchie claims it "would be manifest injustice to allow the Receiver unfettered discretion over the documents and property obtained now that Appellants are judgment creditors." Br.34. The "sole discretion" language in the court's order refers to the Receiver's right to destroy Receivership Property following the resolution of pending litigation. ADD.13, R.Doc.3274 at 8 (after the pending litigation is resolved, the Receiver is authorized to "destroy Receivership Property at such time as the Receiver deems appropriate, in his sole discretion, … subject to requests to continue to maintain such Receivership Property"). The district court retains jurisdiction to enforce the provisions of the order. ADD.14, R.Doc.3274 at 9.

Finally, Ritchie's claims of "manifest injustice" based on its status a judgment creditor ring hollow in light of its promise not to make further requests in the Receivership, or to pursue Receivership assets, in exchange for the ability to obtain those judgments. SADD.5, R.Doc.3083 at 6. As the district court reminded Ritchie, "To the extent the judgments exist, they speak for themselves. Ritchie has previously stipulated in this case that it will not use any judgments it obtains against Thomas J. Petters to execute against Receivership assets or otherwise interfere with the Receivership." ADD.11, R.Doc.3274 at 6.

## **CONCLUSION**

For all the foregoing reasons, the Court should dismiss the appeal or, alternatively, affirm the district court's judgment.

Dated:  January 25, 2022

Respectfully submitted,

*/s/ James A. Lodoen*

Steven E. Wolter
KELLEY, WOLTER & SCOTT, P.A.
431 S. Seventh St., Ste. 2530
Minneapolis, MN 55415
Tel: (612) 371-9090
swolter@kelleywolter.com

James A. Lodoen
Jessica J. Nelson
SPENCER FANE LLP
100 South Fifth St., Ste 2500
Minneapolis, MN 55402
Tel: (612) 268-7000
jlodoen@spencerfane.com
jnelson@spencerfane.com

*Attorneys for Appellee Receiver Douglas A. Kelley*

Dated:  January 25, 2022

Respectfully submitted,

*/s/ Gregory G. Brooker*

Gregory G. Brooker
Assistant United States Attorney
United States Attorney's Office
District of Minnesota
300 South 4th Street, Ste. 600
Minneapolis, MN 55415
Tel: (612) 664-5600
greg.brooker@usdoj.gov

*Attorneys for Appellee United States of America*

## CERTIFICATE OF COMPLIANCE

1.      This document complies with the word limit of Fed. R. App. 32(a)(7)(B), as extended by the Court's January 18, 2022 Order, because, excluding parts of the document exempted by Fed. R. App. P. 32(f), this document contains 15,470 words.

2.      This document compiles with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in Times New Roman, font size 14.

3.      Pursuant to 8th Cir. R. 28A(h)(2), the undersigned further certifies that Appellees' brief and addendum have been scanned for viruses and are virus-free.

Dated:  January 25, 2022                    Respectfully submitted,

                                            */s/ Jessica J. Nelson*
                                            Jessica J. Nelson
                                            Attorney for Appellee
                                            Receiver Douglas A. Kelley

67

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 25, 2022, I electronically filed the foregoing

Brief of Appellees United States of America and Douglas A. Kelley with the Clerk

of Court for the United States Court of Appeals for the Eighth Circuit by using the

CM/ECF system.  I certify that all participants in the case are registered CM/ECF

users and that service will be accomplished by the CM/ECF system.

Dated:  January 25, 2022          Respectfully submitted,

                                      */s/ Jessica J. Nelson*
                                      Jessica J. Nelson
                                      Attorney for Appellee
                                      Receiver Douglas A. Kelley

Appellate Case: 21-2973    Page: 80    Date Filed: 01/25/2022 Entry ID: 5120636